# John A. Heard *et. al. v.* Jacob James.

1. REPLEVIN—MEASURE OF DAMAGES.—In actions of replevin, damages are deter-
mined upon the same principles as in trespass. They may be punitive or remu-
nerative simply, according to the presence or absence of malice, or wantonness in
the taking.

2. SAME—SAME—WHEN PROPERTY TAKEN HAS BEEN ENHANCED IN VALUE BY LABOR.—
The rule for the measure of damages for the wrongful taking or detention of pro-
perty is to be determined by the animus of the conversion. If the act was in good
faith, upon some supposed right of claim, or error, the measure will be the value of
the property at the time it was taken: but if the taking or conversion be character-
ized by malice or oppression, damages may be punitive, and in an action for its re-
covery, no allowance will be made the defendant for any increased value, that may
be bestowed by skill and labor on the property.

3. SAME—RULE IN TRESPASS—TROVER AND REPLEVIN.—The same rule obtains in
trespass, trover, or replevin; in the latter, plaintiff's right to pursue, whenever
property can be identified, is unaffected by any change made in the shape or form.

Error to the circuit court of Hinds county. Hon. GEORGE
F. BROWN, Judge.

This was an action of replevin brought by James against
plaintiffs in error, for the recovery of a large lot of staves,
about four thousand in number, or the value of said staves.

After the levy of the writ, Heard & Harrell, gave a re-
plevin bond, in the penalty of $500, double the value of the
staves, as estimated in the return of the sheriff, and the
property was thereupon delivered to them.

The defendants, to the declaration, pleaded the general
issue.

On the trial the following evidence in substance was introduced.

The plaintiff, James, owned a tract of land in Hinds county, adjoining the lands of a Mrs. Alice Herring. Heard & Harrell, by contract with Mrs. Herring had been for some time cutting timber on her land. Heard & Harrell went upon James' land and cut down eighteen white oak trees; from these the staves levied upon were manufactured. Heard & Harrell hauled the staves, levied on and *replevined*, two thousand in number, to Byram station, on N. O. J. & G. N. R. R., where they had them packed in cars, ready for shipment to New Orleans at the time they were seized. Plaintiff never gave any authority to Heard & Harrell, to cut timber on his land, and has never been paid for the timber so cut.

The number of staves levied on, was four car loads. Of this number Heard & Harrell carried off two car loads without giving any replevin bond for them, and replevied the other two car loads, amounting to two thousand staves, known and classed as " hogshead staves." * * * * *
New Orleans price currents were introduced, by consent, showing the market price for " extra hogshead " staves, in April and May, 1873, to have been from $150.00 to $160.00 per thousand. *A mercantile thousand of staves is really twelve hundred.*

It was stated by plaintiff, in his testimony, that the timber was cut in the spring, saying *last* spring, without stating the year or month.

The affidavit in replevin was made April 5, 1873, and the cause was tried in June, 1873.

The two thousand staves replevied by Heard & Harrell alone were involved in the trial and proceedings. The return of the sheriff and the replevin bond were introduced by plaintiff. The defendant introduced no evidence.

The following instructions, in substance, were granted for the plaintiff:

If the jury believe, from the evidence, that defendants

unlawfully detained the staves, as stated in the declaration, which staves were, at the time, the property of James, they should find for plaintiff.

In assessing damages, the jury should find for the injury done James outside the value of the staves, and in addition, will find the value of the staves.

The plaintiff excepted to the action of the court in giving these instructions.

The following instructions, asked by defendants, were refused, to which exception was also taken at the time:

If the jury believe, from the evidence, that defendants, without authority, entered upon plaintiff's land, and cut down his trees, and made said trees into staves, and carried away the staves, and converted them to his own use, such acts constituted a trespass; for which, defendants would be liable in the statutory action of trespass, but on such state of facts, plaintiff cannot recover in *this* form of action.

The jury found for the plaintiff, and assessed the value of the property at $250.00. Accordingly the court rendered a judgment for the specific two thousand staves, or in default, for the sum of $250.00.

The defendants thereupon moved for a new trial on the following grounds:

1. The court erred in granting instructions for plaintiff.
2. In refusing instructions for defendants.
3. The jury found contrary to the law.
4. The jury found contrary to the evidence.
5. The verdict is excessive.
6. On affidavit of defendant, as to his accidental absence from court at the trial.

The following affidavits were read in support of the motion:

Affidavit of Heard—He states that he left the State of Louisiana, where he had been on important business, in ample time, as he supposed, to reach Jackson for the trial; explains in detail the obstacles that delayed him on the route; states that he did not reach Jackson until a

day or two after the trial of the case ; also states what facts
he would testify to, on the issue in the case, viz.: That he
was cutting timber on Mrs. Herrin's land, by her permission,
when plaintiff came to him and suggested that his hands
had crossed the line, and were cutting on his land ; there-
upon plaintiff and Heard agreed that the cutting should go
on, and that afterwards the line should be run, and if any of
plaintiff's trees were cut, then Heard was to pay him for the
*trees* actually cut, at the *rate* Heard was to pay other parties
for similar trees.

The affidavit is in *all respects full and explicit.*

Plaintiff introduced the following affidavits in rebuttal :

Affidavit of Jacob James, plaintiff—Denied that he ever
had any conversation or agreement of the kind with Heard,
and re-asserts that the trees were cut without any authority
or license whatever.

Shall Yerger states that he saw Harrell in Jackson a
few days after the trial, when he stated to affiant, that he was
in Jackson on the day when the case was tried.

George Donnell stated that he saw Harrell in Jackson on
the day when the case was tried.

Chas. Clark stated that he saw John A. Heard in Raymond
within three days preceding the 10th day of June.

The court overruled the motion for a new trial, and there-
upon the defendants obtained a writ of error.

*Johnston & Johnston*, for plaintiffs in error :

The first question we desire to present to the court, is con-
tained in the second instruction granted for the plaintiff.

The action was replevin, and the defendants, Heard &
Harrell, had given a property or replevin bond in the case.

The court instructed the jury, for plaintiff, that the
measure of damages, *was the value of the staves levied on*,
and also, all injury done the defendant "outside" of the
value of the staves.

The jury found the value of the staves to be $250.00, es-
timating the price by the New Orleans quotations, $150.00

to $160.00 per thousand, counting according to the mercantile custom, twelve hundred staves to the thousand, and gave the defendant no damages outside the value of the staves.

We complain of this instruction, as not giving to the jury the true rule as to the measure of damages, and we insist that the true rule, was the value of the staves, less the labor and expense, of manufacturing the timber into staves.

In an ordinary action of trespass, not for the specific property but for damages, the measure of damages would be the value of the timber when it is first cut down and becomes a chattel.    Bennett v. Thompson, 13 Ired., 146; Smith v. Gonder, 22 Ga., 353.

In general, the proper rule is the value of the trees as they stood on the land before the trespass.    Whitbeck v. N. Y. Central R. R. Co., 36 Barb., 644.

. It is clear, therefore, that in actions which in form are for the recovery of damages viz.: Ordinary actions of trespass, the true rule is as announced by the authorities cited.

It has been held in an action of *trover* for coal dug out of a mine, that the measure of damages was the value of the *coal before it was mined.*    Forsythe v. Wells, 41 Penn, 291.

So also in *trover* for petroleum, the recovery is limited to its value when taken from the freehold, exclusive of the labor of obtaining it.    Kerr v. Peterson, Penn. State R., p. 357.

In *trover* for conversion of timber, the measure of damages is its value when first separated from the freehold.    Moody v. Whitney, 38 Maine, p. 174.    And it is further demonstrated by the cases last cited, that this rule obtains in all cases *where the* recovery is for damages, and not a judgment for the specific property.    It is admitted, that a wrong done cannot change the title, by changing the form of another man's property; and that, in certain forms of action, the owner may follow and reclaim it.

It remains, therefore, to inquire whether the measure of damages, as above stated by us, is changed by the form of action in the present case.    We contend that *it is not.*    And

in this connection we call the attention of the court, to the fact, that the trespass was not an aggravated one; it was accompanied by no features of malice or wantonness. The defendants owned land adjoining plaintiff's freehold, and had their hands cutting on their own land somewhere near the line; the hands, in cutting out a large quantity of white oak trees, crossed the line and felled and carried away eighteen white oak trees on plaintiff's land. These trees were manufactured into two thousand staves. There was no claim for punitive damages, or special damage to the land; but the only claim was for the value of the *timber*. And the question was, whether it was for the full value of the staves, or the value of the timber at the time it was severed from the freehold? We are thus precise in stating the facts upon which the question rests, because many of the authorities hold that special and direct damages beyond the value of the timber, may be awarded, and there are many cases where wantonness, malice, or greatly aggravated circumstances existed in which exemplary damages were awarded. We therefore state that in this case the only claim was for the *actual damages*, and the *only controversy* was as to the rule that should govern in ascertaining the actual damages. The principle, if an arbitrary rule may be so called, which fixes the measure of damages, is the kind of judgment which is rendered in the particular action. If it is a judgment, as in detinue, it would necessarily be for the specific property; if, however, the *form* of action gives a judgment for damages, or the action *so changes during its progress* as to result in a judgment for damages, then the measure of damages must be as first stated by us.

This action, as it stood at the time of the judgment, was one which required an application of the rule as to damages insisted upon by us. The statute (Code 1871, chap. 16,) providing for the action of replevin, requires the property to be restored to the defendant upon his executing a bond. Sections 1531 and 1533 directs that when the property remains in the

hands of the defendant, if the plaintiff *recover*, the judgment of the court shall be, that the defendant and his sureties restore the property to the plaintiff or pay him *the value to be assessed by the jury.* Where a defendant appears and gives bond, and the property is restored to him, by what rule is the jury to be governed in assessing the *value of the property?* In Herdie v. Young, 55 Pa., this precise question was presented in *an action of replevin* under a statute similar to ours. The court said that in *an action* of trespass, the value of the timber less the value of the labor bestowed upon it, or in other words, its value at the time it was severed, was undoubtedly the measure of damages.

The same rule was held to apply in an action of replevin, *where the defendant gave the property bond.* "This result," say the court, "depends upon himself" (the defendant). If he gives the bond, and there is a verdict for damages, the effect is to transfer the title to the property to defendant. The damages of plaintiff are thus brought to its true standard.

Such a standard "is reasonable, and does justice to both parties." Herdie v. Young, 56 Pa.

Also in the case of Single v. Schneider, 24 Wis., p. 300, *in replevin*, where the defendant had retained the property and given bond, Herdie v. Young was cited with approval, and the same rule announced.

The absurdity of a rule which would give a man, for eighteen trees, worth, probably, one dollar each, a judgment for damages, for the value of the trees manufactured into staves—estimated at $250.00—is sufficiently demonstrated by its statement.

The attention of the court is respectfully called to the two cases last cited. They make an application of the ordinary rule *to the action of replevin*, where the defendant gives bond and retains the property, which is rational and logical; and there, authorities demonstrate that where the defendant *gives bond*, that the question becomes one of damages in money, and, in effect, the judgment is for damages merely,

to be measured by the value of the property.  Thus, upon an-
alysis, showing that this latter is the *identical question in
trespass*, and should be governed by the same rule.  The
jury were given an erroneous rule in this case on the ques-
tion of damages, and this is sufficient for a reversal of the
judgment.

In conclusion, we submit that the court should have
granted a new trial on Heard's affidavit.  His evidence was
*material*, and important, and it was no answer to produce
James' affidavit, in which he denies that he made the agree-
ment stated by Heard.  It was Heard's right to have this tes-
timony go to the jury.  Vannerson v. Pendleton, 8 S. & M.,
452.  The counter affidavits do not negative the statement
of Heard, that he was unable to reach Jackson in time for
the trial.

We respectfully submit that the judgment of the circuit
court should be reversed.

*J. A. Brown*, for defendant in error:

Replevin may be brought by the owner of land, for
staves made of trees severed from the freehold.  Second
Morris on Replevin, p. 95, and cases cited: 1 Blackstone's
Commentaries, book 2, p. 405 marginal, 326 top; Chitty's
Edition, and authorities cited; ib., book 4, p. 233; Title Lar-
ceny 4, and authorities cited.  Such is the rule, as held by
the courts of last resort; in New York, Wheeler v. McFarland,
10 Wend., 322; in New Jersey, 4 Zabr., 387; in Illinois, 16
Ills., 149; in Pennsylvania, Snyder v. Vaux, 2 Rawls Penn.
R., 423–426; 5 P. F. Smith, 172; in England, Martin v. Por-
ter, 5 Meeson & Welsby 351; and in Mississippi, Harris v.
Newman, 5 Howard, 651.

In such a case, if the trees were severed and manufac-
tured into staves, by willful trespassers, without the consent
of the freeholder, the jury, in assessing value, should assess
the value of the staves, and not of the trees.  7 Cowan, 95;
5 Johnson,     ; 6 ib., 168; 10 ib, 287; 2 Rawl., 426.  A
trespasser c   a. give no right in property from the principle

of accession. But the owner may reclaim it, whatever alteration of form it may have undergone. 2 Kent's Com., 362; 22 Pickering, 561; 31 Miss., 561–2–3. If one fraudulently intermix his property with mine, or add value to my property, by labor, it is incumbent on him to distinguish his own part, by proof at the trial, or I take the whole. Bacon's Abridgement, Trespass E, 2. No man can *force* himself into the position of creditor to another, nor, by means of a trespass, acquire an offset against the consequence of his trespass. Greenleaf on Evidence, vol. 2, § 107; American Law Review, vol. 7, April, 1873, Recoupment; Barbour on Set-off, ch. 2. A willful trespasser acquires no claim, lien or property in or upon another's chattels by expending time, labor, and money on them, against the owner's will. 7 Cushing, Mass., 435–439; 7 Howard, Miss., 421; 5 Meeson & Welsby, 351.

An erroneous instruction is no ground for reversal, where the verdict is clearly right on the law, and facts. 44 Miss., 731; ib., 762; ib., 212; ib., 466. Nor will this court reverse the finding of the jury on questions of fact. The opinion of Judge Simrall, in N. O., J. & Gt. N. R. R. Co. v. Aaron Field, is the last of a train of decisions on this point. The case appears to have been ably argued and well considered. He says: "It has become the settled practice in this court, and, as it seems to us, accords with reason, and is needful to the practical administration of justice, not to disturb the verdict of the jury, if it can be supported by any fair view of the testimony, which they may have taken and had a right to take."

SIMRALL, J., delivered the opinion of the court:

It is not controverted that James, the plaintiff, was owner of the land, and of the trees, which were cut down by the defendants or their servants, and by their order converted into staves. The severance of the trees from the freehold, made them personalty; and working them up into staves, did not prejudice the right of the owner to pursue

them into the new form. Harris v. Newman, 5 How. R
658. He might waive trespass, and sue in "trover," for t
conversion, or he might bring replevin for the staves
Brown v. Sax, 7 Cowen, 95 ; 5 John, 348 ; Wingate v. Smith,
20 Me. Rep., 287 ; Harris v. Newman, *supra.*

About two thousand staves were seized under the writ,
which were worth, in New Orleans, about $300.00 ; the ver-
dict was for $250.00. The only serious question is, as to the
"rule" of the measure of value. Shall that be determined
by the worth of the trees, immediately after they were
felled, or by the value of the staves ? The principle is of
general approval, that damages in the action of replevin,
rest upon much the same grounds, as in trespass. In proper
cases they may not be confined to mere pecuniary remuner-
ation, but may be punitive, if the taking was tortious ac-
companied with malice, wantonness or oppression. Barrage
v. Nelson, Opinion Book C. p., 374, and cases there cited.

The cases are not agreed when the value of the thing has
been enhanced, by the labor and skill employed to adapt
the material to some more useful purpose, shall be deducted
and allowance only made for the thing in its original crude
state. In this case, should the plaintiff be confined to the
value of the trees, or may he recover for the additional
value imparted to them when worked up into hogshead
staves ?

The plaintiff has three remedies ; first, trespass ; second,
trover ; and third, replevin. The two latter resting on the
fact, that the trees by severance from the freehold, become
personalty ; and the defendant, by appropriating them, was
guilty of a conversion. There is no conflict in the authorities,
that replevin will lie wherever the original material can be
traced into the new form. It has been difficult to define
satisfactorily, the rule to compute the value. The case of
Brown v. Sax, 7 Con., 97, is like this : There the taking of
the trees was tortious, the boards made out of them were
the property of the owner of the trees, and by a conversion,

action being trover, the plaintiff, in the opinion of a
ajority of the court, was entitled to the value of the
boards; Sutherland, J., dissenting from some of the views of
the court, suggested some strong considerations, why in all
circumstances the rule should not apply.   In Martin v. Por-
ter, 5 Mees. & Welb., 351; the action was trespass, for dig-
ging and taking away coals; Park B. said " The plaintiff must
be paid their value when they were begun to be taken away,
and that without being subject to the expense of getting them,
which was a wrongful act of the defendant.   Abbinger, C-
B., stated if the plaintiff had demanded the coals, no lien could
have been set up, in respect of the expense of getting them;
he cannot set up his own wrongs."   In Wild. v. Holt, 9 Mees.
& Welb., 672; the action being trover, the question was,
when the value of the coals was to be estimated, whether
the expense of getting them, and the quarterage rent to the
owner, should not be deducted; it was ruled in conformity
to the former case, that such deduction should not be made.
In Smith v. Gouder, 22 Ga. Rep., 354, on the authority of
these English cases, it was held, that the cost of making the
cross-ties and cutting the tops into wood, ought to be de-
ducted.   The action was trespass.

It has been much canvassed in the courts, whether the
form of the action, as trespass, trover, or replevin, should
influence the amount of pecuniary recovery.   In the two
former, the recovery may be enhanced, above the harm done
by the trespass, or the value of the thing conveyed accord-
ing to the circumstances.   In replevin, where the plaintiff
gives bond for the property itself, or its value. If the defendant
retains  the property by giving a bond, the question is em-
barrassed by the form  of the action.]  The tendency of the
modern cases is to hold, that if by mistake, or without inten-
tional wrong, trees are cut and converted into some other
forms more valuable, the jury ought to deduct from the es-
timation, the value of the time, labor and skill bestowed
upon them by the defendant.  But on the other hand, if the

defendant has been a wanton or willing trespasser, or if after his mistake as to the ownership was discovered, he does not act fairly with the plaintiff, then the jury may disregard a partial or full estimation of the enhanced value. Such was the principle deduced by Mr. Sedgwick from the decisions.

"If (says he) the property had been altered and increased in value, it would depend (as to amount of recovery) on the character of the conversion; if that were willful, the value of the articles so increased would be the rule." "But if the act were *bona fide*, the rule would be to allow the defendant for whatever value his labor, had actually conferred upon the property." Sedgwick on Measure of Damages, 578. Whilst the authorities do not harmonize on the subject, we think this rule comports with reason and morality. The motive which prompted the act of the defendant, whether *bona fide* or actuated by willfulness, and a disregard of the rights of others, should be considered by the jury.

The proof was, that the line between the lands of the plaintiff's and the land of the adjacent proprietor, upon which the defendants had the right to make staves, was blazed; that defendants were notified that they were cutting upon the plaintiff's land, they however cut down and used eighteen white oak trees to make the staves; that defendants never paid plaintiff for the timber or the staves, but hauled them to the depot at Byram, for shipment to New Orleans. We think it clear that in this case, the jury would have been justified, in assessing the value of the staves. The conduct of the defendants was willful, utterly regardless of the rights of the plaintiff.

The staves were of excellent quality, and worth from $150 to $160 for a commercial thousand, at New Orleans; the verdict was for $250. The jury did not over estimate the value.

The jury did not estimate the value by an erroneous standard. The verdict is right; it is therefore unnecessary to consider the instructions.