ILLINOIS CENTRAL RAILROAD CO. ET AL. v. R. E. LeBLANC.

1. REMOVAL TO FEDERAL COURT. *Jurisdiction.*

The state court ceases to have jurisdiction of a cause upon the filing of a petition and bond for the removal of the case to the federal court, only when the petition and bond, taken in connection with the whole record, shows a case that is removable under the acts of congress.

2. SAME. *Diverse citizenship. Defendants fraudulently joined.*

The removal of a cause to the federal court, on the ground of petitioner's citizenship of another state, is properly refused, where, in connection therewith, he merely alleges that his co-defendants, like the plaintiff, are citizens of this state, and were fraudulently made defendants to prevent a removal, the case being one in which all of the defendants were sued as joint tort feasors.

3. EVIDENCE. *Value. Offers to purchase.*

In a suit for damages for the taking of gravel from plaintiff's land, it is incompetent to prove offers to purchase made to plaintiff, and evidence of value based thereon should not be received.

4. SAME. *Prices paid.*

In such case testimony of prices paid for gravel spread upon the streets of a city, there being no evidence as to what it cost to place it on the streets, is incompetent; but if the cost of getting the material from the pit, and its transportation, etc., is shown, such evidence is admissible for consideration with other evidence in determining value.

5. SAME. *Prices received by contractors.*

In such suit evidence of what contractors for paving the streets of a city with gravel received on their contracts, their profits and the amounts paid by the city for their guaranty to maintain the streets not being shown, is incompetent.

6. SAME. *Purposes for which material used.*

In such case it is competent to prove any purpose for which the material could be used.

7. SAME. *No market value. Actual sales. Other markets.*

Where the property to be valued cannot be definitely graded and has no market standard, but is frequently bought and sold, there is more scope in the admission of evidence in proof of value than in ordinary questions of value; and in such cases actual sales of like property, and market value at other places, accompanied by evidence of the cost of transportation thereto, etc., may be shown; but the value is to be determined from the whole evidence, and not from the prices received from sales in small quantities.

8. MEASURE OF DAMAGES.

Where material has been taken from the land of another under an honest claim of title, or where the trespass was from ignorance, and was not wilful, damages will be confined to the value of the property *in situ,* and such other damages to the land as the taking may have caused.

9. ESTOPPEL. *Volenti non fit injuria.*

Where defendant was in possession of and claimed to own a gravel pit, and plaintiff, doubting the validity of his own title thereto, accepted employment from defendant to load its cars with the gravel, he is not estopped thereby from recovering of defendant the value of the material taken during such employment; and the maxim *volenti non fit injuria* does not apply.

10. EXCESSIVE VERDICT. *Shocking to conscience.*

A verdict which is so excessive as to shock the conscience should be set aside by the court.

FROM the circuit court of Pike county.

HON. W. P. CASSEDY, Judge.

This was a suit at law brought by LeBlanc against the Illinois Central Railroad Company, and a number of laborers in its employ, to recover damages for the taking of gravel from plaintiff's land. For a full statement of the facts in the case, reference is made to the cases of *LeBlanc* v. *Illinois Central Railroad Co. et al.,* 72 Miss., 669; *LeBlanc* v. *Illinois Central Railroad Co.,* 73 Miss., 463; and *Illinois Central Railroad Co.* v. *LeBlanc, post,* 650, as well as to the opinion herein. The declaration demanded $202,479.76; the verdict and judg-

ment of the court below was for $60,000 in plaintiff's favor, and defendant appealed.

*Mayes & Harris*, for the appellant.

*Removal to federal court.*—The averments of the petition for removal are sufficient, and the appellant had the right, and now has it, under the statute, to remove a case into the federal court when sued in this state by a citizen thereof, on the ground of diversity of citizenship, notwithstanding the fact that it is operating a line of railroad within this state. This is well settled. The determining question is its citizenship, and not its business location or residence; and that citizenship is determined alone by the grant of its charter. In other words, it is a citizen of that state which granted its charter, to wit, the State of Illinois. *Railroad Co.* v. *Koontz*, 104 U. S., 5; *Shaw* v. *Quincy Mining Co.*, 145 U. S., 444; *Martin* v. *B. & O. R. R. Co.*, 151 U. S., 673.

The court will observe that the state court refused the petition for removal without a denial being made of the averments of the petition. In other words, the refusal was on the face of the petition. If the petition stated a case for removal, this was erroneous. It would have been erroneous, even if the averments of the petition had been traversed. In cases where the proceedings for removal are in conformity with the act, the removal is imperative, both upon the state and the federal court; and if the facts upon which the removal is based are contested, it must be done in a formal manner, by pleading and proofs, in the federal court. The question of jurisdiction in such a case belongs to the federal court, and must be determined there. Dillon on Removals, 92, note 2; *Dennistoun* v. *Draper*, 5 Blatchf., 336, 338; *Taylor* v. *Rockefeller*, 7 Cent. L. J., 349; *Cobb* v. *Ins. Co.*, 3 Hughes, 452.

That the averments of the petition are sufficient, we maintain. The petitioner showed that it was a citizen of the State of Illinois and not of this state; that the plaintiff was a citizen of the

State of Mississippi. That made a clear case for removal, except for the fact that sued along with the petitioner were the laborers described in the petition, and the averment is that those laborers were united fraudulently, for the purpose of preventing the right of removal. *Plymouth Co.* v. *Amador Co.*, 118 U. S., 264; *Louisville R. R.* v. *Wangelin*, 132 U. S., 599. In this latter case, it is true, the supreme court decided against the removal, but the reason which they gave for their decision supports the right of removal in this case. There the supreme court decided against the right of removal because no fraud was alleged in the petition, while in this case such fraud was alleged. In fact, this petition for removal was drawn with the case in 132 U. S. before the pleader, and in view of that decision. The question of the burden of proof to support the averment of the petition is irrelevant and immaterial here. That would arise upon the motion to remand in the federal court, which has exclusive jurisdiction to determine that question. *Jackson* v. *Railroad Co.*, 58 Miss., 648. That the wrongful refusal of the state court to remove the cause, and its wrongful subsequent proceeding in the cause, is ground for reversal is clear. After the presentation of the petition and bond in proper form, the jurisdiction is changed, and subsequent proceedings in the state court are void. *Railroad Co.* v. *Miss.*, 102 U. S., 135; *Gordon* v. *Longest*, 16 Peters, 97; *Kanouse* v. *Martin*, 15 How. (U. S.), 198; *Kern* v. *Huidekoper*, 103 U. S., 485; *Railroad Co.* v. *Koontz*, 104 U. S., 5; *Davis* v. *South Carolina*, 107 U. S., 597; *Railroad Co.* v. *White*, 111 U. S., 134. If the party fails in his efforts to obtain a removal and is forced to trial, he loses none of his rights by defending against the action in the state courts. *Removal cases*, 100 U. S., 457; *Railroad Co.* v. *Miss.*, 102 U. S.; *Kern* v. *Huidekoper*, 103 U. S.; *Railroad Co.* v. *White*, 111 U. S. The court will observe that the point of the error of the court in refusing the removal, expressly reserved in the special bill of exceptions, but also it was again insisted

upon in defendant's motion to exclude plaintiff's evidence, which was overruled.

*Measure of damages.*—Our proposition that the court erred in numerous particulars in its rulings in respect to the measure of damages, comes next in order. That proposition needs to be looked at from several points of view.

1. We maintain that, under the circumstances of this case, what the plaintiff was entitled to recover was the value of the material as it lay in the pit, without any augmentation growing out of the labor expended thereon by defendants in getting it out, or the accession of value which it received by and through the fact of transportation from the pit to its place of market or use.

2. We maintain that it was error in the court to allow the plaintiff to prove by himself and other witnesses special sales of limited quantities, whether selected or not, as the basis of computation of value—as, for instance, the pretended offer received from the man April and that from the man Rosenfield, and also the case of the sale to Maurice Hart and that to the city of Brookhaven.

3. We maintain that it was error in the court to allow the plaintiff to attempt to prove a basis of value by showing the price obtained by street paving contractors in the city of New Orleans under their street paving contracts for work done on the streets in which gravel was used, and to endeavor to deduce therefrom, by calculation on insufficient data, the value of gravel at the pit.

4. We maintain that it was error in the court to allow the plaintiff to show, as a basis for his recovery, the use of the gravel by the defendant railroad company as ballast and for other railroad purposes.

5. We maintain that it was error in the court below to allow other than a nominal recovery in this case, in the absence of any proper proof of either a market for the material taken or a market value for the same:

The law in respect to the measure of damages is as follows:

*English rule.*—"We have had occasion before to examine the case of trespass committed by mining and carrying away minerals. Here the most essential part of the wrong consists in the removal of the mineral, which is to be estimated at its value at the time the defendant began to take it away—that is, as soon as it existed as a chattel, its value will be the sale price at the pit's mouth, after deducting from it the expense of carrying from the place in the mine where it is got to the pit's mouth, but not the cost of severing it. Separate compensation must be given for all injury done the soil by digging, and for trespass committed in dragging the mineral along the plaintiff's adit. It seems, however, that where there is a real disputed title, the case is different, and the minerals are to be valued as if the soil in which they lay had been purchased from the plaintiff." Woods' Mayne on Damages, 1st Am. Ed., top p. 546; 9 Meeson & Welsby, 673; *Word* v. *Moorewold*, 3 Qu. Bench, 440; United Merthys Coleridge Co., Law Rep., 15 Eq., 46; *Jegon* v. *Vivian*, Law Rep., 6 Chy., 743; 40 Law Jour., Chy., 389; *Jobe* v. *Potlin*, Law Rep., 20 Eq., 84; 44 Law Jour., Chy., 262; 8 Meeson & Welsby, 146.

*American rule.*—"The general rule upon which compensation for injuries to real property is given, is that the plaintiff should be reimbursed to the extent of the injury to the property. The injury caused by the defendant may be of a permanent nature. In such case, the measure of damages is the diminution in the market value of the property. If the injury causes a total or partial loss of the land for a limited time, the diminution in the rental value is the measure. One of these measures is always applicable." Sedgwick on Damages, vol. 3, par. 932.

"When, by a trespass upon real property, trees standing upon the property are destroyed, the value of the trees can be recovered. If the trees are full grown timber trees, this is all that can usually be recovered. If they are fruit or ornamental

trees, however, the injury goes beyond the mere destruction of the trees. It is an injury to the realty, since the value of that is diminished by more than the value of the trees as timber, because their chief value is for productive and ornamental purposes. The measure of damages when ornamental and fruit trees are cut, is the difference in the value of the realty before and after the trespass.'' Sedgwick on Damages, vol. 3, par. 953.

''In this case, as in others where labor has been expended upon the chattels obtained by trespass on real property, attempts have been made to recover the value of the chattels after the labor has been expended upon them, upon the ground that the chattels still remain the plaintiff's property, and he had a right to take them where he finds them, or, at his option, to recover compensation for the loss of them at that time. It has accordingly been held in many cases that the measure of damages is the value of the logs immediately after cutting. It would, however, be better not to allow such recovery in an action for trespass upon real estate.'' Sedgwick on Damages, vol. 3, par. 934.

''Where coal ore or other valuable mineral is wrongfully, in good faith, mined from the plaintiff's land, the measure of damages is generally, and properly, held to be the value of the coal ore taken as it lay in the mine, often estimated by taking the value at the mouth of the mine and subtracting the expense of raising it to the point; or, if the mineral is reduced or dressed there, its value in that state, less the expense reasonably incurred. Some cases hold the measure of damages to be the value of the coal ore directly after it was severed, without allowance for expense of severing, on the ground that the coal ore is at that moment converted, but as the injury is really to the realty, the value of which is diminished by the value of the mineral *in situ*, the rule as stated gives compensation, and is the true rule.'' Sedgwick on Damages, vol. 3, sec. 935.

''The rule of damages where ore is removed and appropri-

ated is not only such injury as may be sustained to the land, but, in addition thereto, the value of the ore at the time and place of the removal. Thus, in Pennsylvania, the removal of coal from the lands of a party entitles him to only actual damage to the land and the actual value of the ore in the ground, and not its value after it has been dug.'' Field on Damages (revised edition), p. 601.

'' Where the defendant has been guilty of no intentional wrong, according to the best authorities, the value of the property *in situ* is the measure of damages. The weight of authority, both English and American, now is that where there is honest dispute as to title, or where the trespass has been from ignorance and not wilful, the damages will be confined to the value of the property before the trespass is committed, or, to use the language of the English courts, at the same rate as if the property taken had been purchased *in situ* by the defendant at the fair market value of the district.'' Am. & Eng. Enc. L., vol. 5, p. 37.

*Mississippi.*—The rule as laid down in Sedgwick on Damages, and as announced in Woods' Mayne on Damages, and in Am. & Eng. Enc. L., above cited, is the rule in this state. See *Heard* v. *James*, 49 Miss., 236.

It is true that the rule expressed in the foregoing case is declared in *Peterson* v. *Polk*, 67 Miss., 163, to be dictum; and whether this court would follow is left open. But in point of fact the rule is in entire harmony with the overwhelming current of authority, as will be shown herein.

*Iowa.*—''In the absence of wilful wrong, the measure of damages is the value of the mineral unmined, or, what is the same thing, its value mined, less the reasonable cost of mining it.'' 45 Iowa, 429; 55 Iowa, 88; 70 Iowa, 166. '' Defendant purchased the right to make hay on plaintiff's wild land of one whom he believed to be authorized to sell such right, but who had, in fact, no such authority. The uncut grass was worth no more than ten cents per acre, while the hay made from an

acre was worth three or four dollars. Plaintiff sought to recover the value of the hay. Held, that he could not so recover.'' 77 Iowa, 190.

*Nevada.*—'' In all actions sounding in tort, no fraud or culpable negligence appearing, the injured party is entitled to full compensation for his loss, and no more. Expressly adopting rule laid down in 45 Iowa, 429.'' 13 Nev., 157.

*South Carolina.*—Defendant took phosphates, believing he had a right to them. Held, that the measure of damage was the value less the amount added by defendant's labor. 22 S. C., 50.

*Tennessee.*—Acting in good faith in taking coal, the damage is the value of the coal *in situ.* 15 Lea (Tenn.), 300; 15 Lea (Tenn.), 480. The weight of authority, where there is a dispute as to title, is the value of the property taken *in situ.* 86 Tenn., 1.

*Pennsylvania.*—Where the act is by one acting in good faith under a claim of right, the measure of damage is the value of the mineral *in situ.* 41 Pa. St., 291; 62 Pa. St., 252; 108 Pa. St., 147. In an action of trespass for cutting timber, its value is to be determined by the price in the vicinity, and not by evidence of net value in a distant market. 63 Pa. St., 212.

*New York.*—The difference in the value of land before and after severance of timber is the proper criterion. 82 N. Y., 308; 29 Barb., 9.

*Massachusetts.*—The lessor of a mine may recover damages from one who has wrongfully taken ore from his mine, the value of the ore, when such value per ton is less than the royalty per ton paid by the lessee; but the value of the ore is to be estimated as it lay in the bed, and not as it was after this value had been increased by the trespasser raising it to the surface. 102 Mass., 80.

*Missouri.*—In an action for wrongfully mining and digging coal, if it appears that the defendant's act was not wilful, the true measure of damages for the coal taken is its value at the

mouth of the mine, less the cost of severing it and delivering it at the mouth.    72 Mo., 635.

*California.*—A trespasser is liable for the value of the gold, less the cost of extracting it.    Held, not liable at all for converting gold-bearing soil, when the cost of extracting the gold was greater than the value of the gold extracted.    58 Cal., 190. The expense of digging gold-bearing earth must be deducted. 30 Cal., 481.

*Minnesota.*—When one in good faith, believing that he has a right to do so, wrongfully cuts and removes trees, the damages are the value of the trees standing on the land.    30 Minn., 481.    Defendant peaceably entered on the premises in controversy under a *bona fide* claim of title, and cut and removed grass growing thereon.    The title having been subsequently adjudged to be in the plaintiff, held, in an action by him for the conversion of the hay, that the proper measure of damages was the value of the grass standing on the land, not the value of the hay after it had been severed.    38 Minn., 250.

*New Hampshire.*—In an action of trespass *quare clausum fregit* for cutting down and carrying away trees, the increased value of the trees caused by the labor of the defendant in converting them into timber is not to be included.    54 N. H., 470.

*Vermont.*—In an action to recover the value of logs taken in the absence of wilful trespass, the measure of damages is the value of the logs in the woods from which they were taken, and not at the mill where they were taken to be sawed.

*North Carolina.*—Same rule as above.    13 Ired., 147.

*Ohio.*—Same rule as above, applied to the innocent purchaser of timber.    32 Ohio St., 571.

*Michigan.*—Same rule in respect to taking and carrying away ice.    44 Mich., 229.

*United States supreme court.*—In the case of an unintentional or mistaken trespasser, or innocent vendee from such trespasser, the value at the time of conversion, less the amount that he and his vendor has added to its value.    106 U. S., 432.

Some of the writers say that the weight of authority, where there is dispute as to title, is that the measure of damages shall be the value of the minerals *in situ*, or the trees standing. This is not, however, an entirely correct statement, because we find no conflict of authority whatever on this rule. We have found no case anywhere that holds differently, so it should be stated that the settled rule, both in England and America, is as we have stated. It would seem, then, in the application of these principles to the LeBlanc case, the only question would be whether or not there was an honest dispute as to the title. But this does not admit of question. The railroad company was the owner of the lands in question. Without the knowledge of the railroad company, the land was assessed by the local assessor of Pike county for taxes, and sold. In the meantime the time for redemption expired, and LeBlanc acquired the title. The railroad company, however, being still in possession and still claiming title to the land, and believing that the action of the tax assessor in selling the land was invalid and illegal, filed its bill in the chancery court to cancel the title of LeBlanc, and the court sustained the view of the railroad company, and decreed in its favor, cancelling LeBlanc's title, and, furthermore, enjoining LeBlanc from interfering in any way with the use of the land of the railroad company. LeBlanc took an appeal to the supreme court, and there the case was reversed, and the railroad company immediately relinquished possession. There could be no question here as to the honest dispute over the title, and it seems that that would answer the question, and determine the character of the railroad company's acts and the measure of damages.

The foregoing authorities fully maintain our first position under this title of "Measure of Damages," to wit, that what the plaintiff was entitled to recover was the value of the material as it lay in the pit, without any augmentation growing out of the labor expended thereon by defendants in getting it out, or the accession of value which it received by and through the

fact of transportation from the pit to its supposed place of market or use.   The rule of law established by those authorities is directly violated by the whole theory of the plaintiff's case and by each and every step of the court, both in the admission of testimony for the plaintiff and the exclusion of testimony for the defendant, and in the refusal of defendant's instructions requested, especially by the refusal of defendant's seventh, eighth and ninth instructions, and by modifying the defendant's twelfth and thirteenth instructions by striking out therefrom the words '' as it lay in the pit.''   If we were to undertake to recapitulate all the instances in which that legal principle was violated by the court, it would require us to set forth here nearly all the testimony in the case.   A glance over our abstract will show this to be true.   Without going into such detailed particulars, we therefore present this point as being fundamental in the case and underlying its whole trial.

*Cassedy & Cassedy* and *J. H. Price*, for appellee.

The rule of damages as given by the court in its instructions was, in short, the value of the gravel at the pit, after being excavated and severed from the body of the hill, less the cost of excavation and severance.   We are aware that there is a diversity of opinion in the American courts as to the true measure of damages in such cases, one class of causes, based upon English decisions, holding that if the trespasser was guilty of no intentional wrong, he should be charged with the value of the material *in situ* with such other damages to the land as his mining may have caused; the other class of cases establishing the rule that the plaintiff would be entitled, independently of circumstances of aggravation, to recover the value of the material immediately upon its conversion into a chattel by a severance from the freehold without abatement of the cost of severance.   Other cases hold the same doctrine, but allow deduction of cost of severance.   The latter rule was the one adopted by the lower court in this cause.   The rule predicated

upon the English authorities was the one the railroad company sought to have applied by the lower court, but that court refused all the instructions asked propounding that rule. *Blaen Avon Coal Co.* v. *McColloh*, 59 Md., 403 (43 Am. Rep., 560), is a leading case sustaining the second rule herein mentioned, and the following are other cases enunciating the same rule: *Bennet* v. *Thompson*, 13 Ired. (N. C.), 146; *Moody* v. *Whitney*, 38 Me., 174; *Maye* v. *Pappan*, 23 Cal., 336; *McLean Coal Co.* v. *Long*, 81 Ill., 359; *McLean Coal Co.* v. *Lennox*, 91 Ill., 561. And *Austin* v. *Huntsville Coal & Mining Co.*, 72 Mo., 535, is a case that adopts the same rule with the qualifications that, where the trespass is neither wilful nor negligent, the measure of damages is the value of material, less the cost of severing and raising. In *Heard* v. *James*, 49 Miss., 236, this court sustained a verdict for the value of staves where no deduction was made for the cost of converting the trees cut into staves, but this was a cause that the court regarded as one of wilful trespass in cutting the timber out of which the staves were manufactured, and we regard it as practically adopting the Missouri rule.

In *Peterson* v. *Polk*, 67 Miss., 163, which was a suit in replevin for staves that had been manufactured out of timber wrongfully cut upon the plaintiff's land, the defendant in that case had permission to cut timber upon lands adjoining the plaintiff's, and he applied to the plaintiff to buy his timber, which he declined to sell, but warned him not to cut any trees on his land. He asked the plaintiff to run the dividing line, but this he declined to do, as unnecessary, and referred him to a colored man, Stewart, to point out the line to him. He applied to Stewart, who ran a line for him, which was wrong, and, treating this line as the proper one, by mistake, he cut the trees on plaintiff's land that he manufactured into staves. Upon the trial the court gave the following instruction: "In assessing plaintiff's damages the jury must be governed by the following rules, that is, if the jury believe from the evidence

that defendant cut plaintiff's trees by mistake and in good faith, believing that they belonged on land not plaintiff's, then the measure of damages is the value of the staves made from the trees, less the costs of cutting and hauling and reducing the timber to staves. But if the jury believe from the evidence that the defendant wilfully and knowingly cut plaintiff's trees, or, knowing that he was near the line of plaintiff's land, negligently omitted to take such reasonable precaution as might have enabled him to ascertain whether or not they were plaintiff's trees, then the jury must assess the damages at the value of the staves at the time and place they were seized by the officers.''

This instruction was approved by this court, but at the same time it was announced that, in doing so, the court was not to be held as approving the rule announced for the measurement of damages in those cases in which the defendant has innocently added value to the personal property of the plaintiff by his work and labor. ''The defendant,'' says the court, ''in this case has no just cause of complaint, but whether the plaintiff is, under such circumstances, bound to make allowance for such work, we do not decide. In *Heard* v. *James*, 49 Miss., 247, there is a dictum to this effect. Whether it is the law we are not now called on to say.'' The court seems to have been of opinion that the rule stated in *Heard* v. *James* as to the allowance for cost of change in the material, etc., being deducted from the value of the improved article, where the original trespass was through mistake and innocence, was not the correct rule, and it is left open; but we take it that these cases establish the rule that the value of the article, after severance and when it becomes a chattel, is the measure of damages, without regard to the character of the taking. However the real measure of damages may be, whether the value of the gravel as it lay in the pit or its value after having been severed from the land, we can see no practical difference in the two rules, for, in their practical operation, the result must be the same.

If the true rule be its value as it lay in the hill, this can only be ascertained by an inquiry as to its market value after being taken from the hill and placed upon the market as gravel, and this market value can only be ascertained by taking into consideration the cost of excavation and transportation to the place of market and what it would sell for, and this, after deducting such cost, would be its market value. So that both rules practically proceed upon the same line of investigation and reach the same result. It seems to us that the books contain a vast amount of learning in attempting to draw a distinction without a difference.

An effort was made to remove the case to the federal court on the ground that a controversy was involved between citizens of different states, the Illinois Central Railroad Company claiming that it was and is a citizen of the State of Illinois, because incorporated there, although operating this particular line of road under a Mississippi charter as lessees of the Chicago, St. Louis & New Orleans Railroad Company.

The action was against the Illinois Central Railroad Company and those it had employed in removing the gravel, citizens of Pike county, in this state. They were treated as joint trespassers and sued accordingly. We take it there will be no serious contention that the employment of these defendants by the railroad company to commit a trespass exempted them from liability to the injured party. They are all treated as joint tort feasors in the declaration, and it does not appear from its allegations that they were employees of the railroad corporation. Removal was sought under the act of congress of August 13, 1888. U. S. Statutes of 1887–1888, page 433 *et seq.*

The case as made by the declaration and as it stood at the time of the filing of the petition for removal is the test of the right to remove. 132 U. S. Rep., 571. The question as to whether it was a severable controversy is to be determined from the record in the state court, unaided by the allegations of the petition or affidavit for removal, and so tested it was

not a severable controversy.    118 U. S., 596; 119 *Ib.*, 502;
122 *Ib.*, 513; 132 *Ib.*, 599; 144 *Ib.*, 527.    See, also, Act of
Congress, 1875, Supt. Rev. Stat. U. S., vol. 1, 1874–1881,
pp. 173, 174, 175.

Argued orally by *Edward Mayes*, for appellant, and by *H.
Cassedy*, for appellee.

WILLING, Sp. J., delivered the opinion of the court.

This is an action of trespass, brought in the court below by
the appellee to recover of the appellant and ten others who
were joined with it as defendants, damages for entering upon
the lands of the plaintiff and removing therefrom a quantity
of gravel, rock, stone, etc.    At the return term of the court,
the appellant presented its petition, which was sworn to, and
bond for the removal of the cause to the federal court.    The
petition stated that the railway company was a citizen of the
State of Illinois, it being a corporation created under the laws
of Illinois, and that the plaintiff was a citizen of the State of
Mississippi, and that the other defendants were citizens of the
State of Mississippi, and had been fraudulently joined with the
railway company, as defendants, to prevent a removal by it of
the cause to the federal court.    The action of the court in de-
nying the application is assigned as error.

It is claimed by the appellant that the circuit court ceased to
have jurisdiction of the case upon the filing of the petition and
bond for removal.    That is true, if the petition, taken in con-
nection with the whole record in the case, showed a case that
was removable under the acts of congress.    Did the petition of
appellant, taken in connection with the whole record in this
cause show that the appellant had the right to have it removed
to the federal court?    In *Insurance Co.* v. *Isador Pichner*, 95
U. S. R., 183, the court say: "This right of removal is statu-
tory.    Before a party can avail himself of it, he must show
upon the record that his is a case which comes within the stat-

74 Miss.—41

ute.   His petition for removal, when filed, become a part of
the record in the cause.   It should state facts, which, when
taken in connection with such as already appear, entitle him to
the transfer.   If he fails in this, he has not, in law, shown to
the court that it cannot proceed further with the cause.   Hav-
ing once acquired jurisdiction, the court may proceed until it
is judicially informed that its power over the cause has been
suspended.''

Counsel for appellant have cited the cases of *Canal Co.* v.
*Plymouth Co.*, 118 U. S. R., 264, and *Railway Co.* v. *Wange-
lin*, 132 U. S. R., 599.   The first case was a suit by the canal
company, in one of the state courts of California, to enjoin the
Plymouth Company and others from polluting a stream of
water running into the canal of the canal company, and for
damages for what had been done in that way.   The Plymouth
Company filed a petition to remove the cause to the federal
court, on the ground of a diversity of citizenship and that there
was a separable controversy between the plaintiff and the Ply-
mouth Company.   It stated that there was a separable contro-
versy between it and the plaintiff, and that the other defend-
ants were not necessary or proper parties defendant to the ac-
tion; that they were merely nominal and formal parties defend-
ant to the suit, and had no interest in the controversy involved,
but were sham defendants, sued in the action with the peti-
tioner to prevent the cause being removed by it to the federal
court.   The court, in holding that the case was improperly re-
moved to the federal court, says: "Upon the face of the com-
plaint, there is in this suit but a single cause of action, and that
is the wrongful pollution of the water of the canal by the united
action of all the defendants working together.   Such being the
case, the controversy was not separable for the purpose of re-
moval, even though the defendants answered separately, setting
up separate defenses.   .   .   .   So far as the complaint goes,
all the defendants are necessary and proper parties.   A judg-
ment is asked against them all, both for an injunction and

money.    Hayward and Hudson are admitted by the answer to
be officers of the corporation, and Montgomery its superintend-
ent.    These persons are all citizens of California, and amenable
to process in that state.    It is not denied that they are all ac-
tively engaged in the operations of the company.   .   .   .   It
is possible also that the company may be guilty, and the other
defendants not guilty, but the plaintiff, in his complaint, says
they are guilty, and that presents the cause of action to be
tried.    Under these circumstances, the averments in the petition
that the defendants were wrongfully joined to avoid removal,
can be of no avail in the circuit court upon a motion to remand,
until they are proven, and that, so far as the record discloses,
was not attempted.''

In the other case cited, the court, in deciding that an action
brought in a state court against two jointly for a tort cannot be
removed by either of them, upon the ground of a separable
controversy between the plaintiff and himself, says:    ''It is
equally well settled that in any case the question whether there
is a separate controversy which will warrant a removal, is to be
determined by the condition of the record in the state court at
the time of filing the petition for removal, independently of
the allegations of the petition, or in the affidavit of the peti-
tioner, unless the petitioner both alleges and proves that the
defendants were wrongfully made joint defendants for the pur-
pose of preventing a removal into the federal court.''

As to the suggestion, made in argument, that the Southeast
& St. Louis Railway Company was fraudulently joined as a
defendant to deprive the Louisville & Nashville Railroad Com-
pany of the right of removal, the court says:    ''It is enough
to say that no fraud was alleged in the petition for removal,
or pleaded or offered to be proved.''

The averments in the petition filed in this case for removal,
as to the wrongful joinder of its co-defendants, are as follows:
''Your petitioner further shows that the co-defendants of your
petitioner are citizens of the State of Mississippi; that the cause

of action declared upon in this case is trespass *vi et armis*, whereby and wherein your petitioner is charged, together with said co-defendants, with invading the close of the plaintiff and taking up and taking away, for its own use, gravel, sand, earth, etc., from said close. Your petitioner avers that its co-defendants are common day laborers, not responsible or coercible at law, and were merely the day laborers engaged in the work of taking and removing, etc., under the employment and operation of your petitioner, without any claim of right to or interest or benefit in the matter involved; and your petitioner avers that the said plaintiff did join each and every of said co-defendants of your said petitioner in the suit, fraudulently, for the purpose of depriving your petitioner of its right to remove this cause from this court into the circuit court of the United States," etc.

The petition not only fails to show that the co-defendants of the petitioners were wrongfully joined as defendants, but shows that they could be joined. Under the circumstances, a mere general allegation in the petition that the other defendants were fraudulently joined to prevent a removal would not avail. The lower court did not err in denying the application and in proceeding in the cause.

On the trial of the cause, there being no dispute as to plaintiff's title, the contest was over the measure of damages sustained. The court permitted evidence to go to the jury, over appellant's objection, (1) as to offers made by one April and Rosenfield to purchase gravel of the plaintiff, and as to the value of the gravel in controversy based on those offers, as testified by the plaintiff himself; (2) as to various sales of gravel made from 1890 to 1896, at the pit, at Brookhaven and in the city of New Orleans; (3) evidence as to the price obtained by street paving contractors in the city of New Orleans under their street paving contracts with the city for work done on the streets, as testified to by Rosenfield, Collom, and others; (4)

evidence showing that the railway company had used part of the gravel taken from the pit for ballasting its track, etc.

The objections to the evidence as to the offers made to plaintiff to purchase gravel, and as to the value of the gravel, based thereon, should have been sustained. *Railway Co.* v. *Ryan*, 64 Miss., 399.

The testimony of Hoskins as to the price paid for gravel spread by him upon the streets of Brookhaven, was not admissible, there being no evidence as to what it cost to place it on the streets. We think the evidence as to other sales, where the cost of getting it from the pit and on the cars, and of transportation, was shown, was admissible to be considered by the jury in connection with the other evidence in determining the value of the gravel in question.

"Where the property to be valued cannot be definitely graded, and therefore not susceptible of valuation by a precise market standard, but, being property which is frequently bought and sold, and has, in some sort, a market value, there is more scope for testimony in the proof of value. . . . Value may be shown by evidence of actual sales of other property similar to that in question; and it is competent to prove the value of other like property by which the property in question may be compared. . . . Where there is no market value at a particular place, proof may be given of the market value at other places, with the cost of transportation," etc. Sutherland on Damages, vol. 1, pp. 796, 798, 799.

The evidence as to prices received by New Orleans street contractors was, in substance, as follows: Rosenfield testified: Was president of the Rosetta Gravel Co., of the city of New Orleans; handled and sold gravel; bulk of their gravel came from Rosetta pit, on the Yazoo & Mississippi Valley Railway, 150 miles from New Orleans; some from Illinois Central Railroad, etc.; transportation on their cars cost $1.25 per cubic yard; their gravel was used to pave streets in New Orleans; was paid for at the rate of $1.25 per surface yard, laid down,

with five years guaranty to keep streets in order. Collom testified: Was contractor in New Orleans, and associated with Morris Hart, and acted as manager of the Rosetta Gravel Co.; gravel is used in New Orleans to pave streets and ballast street railroads; he handled for Rosetta company 10,000 or 12,000 cars of gravel to pave street railroads (2,000 or 3,000 per year); the company's pits were at Rosetta and Chatawa; gravel was purchased by the Rosetta company at $16 per car, delivered in New Orleans, and the company received $45, laid down on the streets; Chatawa is 90, and Rosetta 123, and Brookhaven 135 miles from New Orleans; quantity from the different pits not known; we were paid by the city $4.50 per cubic yard; cost of hauling and handling about sixty-five cents per cubic yard.

The evidence as to the prices received for the work by the street contractors was incompetent, as it failed to furnish sufficient data to enable the jury to deduce the value of the gravel in question, as the profits made by the contractors under their contracts with the city and the amount paid them for guaranteeing the work for five years was included in the amount paid for the work, and was not known.

As the plaintiff had the right to show any purpose for which the material could be used, it was competent for him to prove that it was used by the railroad company for ballasting its track, etc.

The appellant also claims that the court erred in the instructions given for the plaintiff, and in refusing instructions asked by the appellant. The second instruction given for the plaintiff was as follows: "The court instructs the jury for the plaintiff that he is entitled to recover the actual value of the gravel at the time of the taking and conversion by defendants, and, in arriving at such valuation, they may take into consideration the uses to which said material was put, and its adaptability to such uses, and the prices paid therefor; and in arriving at a fair value they may deduct the cost of securing it from the hill and transporting it, and all costs necessary to place it on the

market, as shown by the evidence, and such value as the jury may find the gravel was worth they shall assess in their verdict as damages sustained by the plaintiff.''

The court refused several instructions asked by the railroad company, but we only deem it necessary to notice the following: '' The court instructs the jury that the plaintiff can only recover the actual value of the material as it lay in the pit.''

Formerly there seemed to have been some conflict in the decisions as to the measure of damages where trees had been cut or material taken from the land of another, growing out of the common law forms of action, a different rule sometimes having been applied for the same injury where the action was in trover or replevin instead of trespass. The tendency of the courts has been to look less to form and more to the substantial object of all rights of action, which is to redress the injury by just compensation. The weight of authority, both in England and America, is that where coal or other material has been taken from the land of another under an honest claim of title, or where the trespass was from ignorance and was not wilful, the damages will be confined to the value of the property *in situ*, and such other damage to the land as the mining may have caused. 5 Am. & Eng. Enc. L., 37; 3 Sedgwick on Damages, sec. 955.

The rule as above stated was adopted by the supreme court of Pennsylvania in *Forsyth* v. *Wells*, 41 Pa. St., 291, and by the supreme court of Tennessee in *Coal Creek Co.* v. *Moses*, 15 Lea, 300, after a review of all the authorities, both English and American. There does not appear to have been any decision in this state directly announcing a rule for the measure of damages in cases like the one before us. In *Heard* v. *James*, 49 Miss., 236, the action was replevin for staves made from timber cut from plaintiff's land. This court held the trespass to be wilful, and Judge Simrall, in delivering the opinion of the court, took occasion to say that damages in the action of replevin rests much upon the same grounds as trespass, and

that the damages to be assessed depended upon the motive which prompted the act of the defendant, whether *bona fide* or actuated by wilfulness and a disregard of the rights of others, should be considered by the jury. The case of *Peterson* v. *Polk*, 67 Miss., 163, was also an action of replevin for staves made from trees cut from the land of the plaintiff, in which the trespass was held to be wilful. The judge who delivered the opinion pronounced as dictum what was said in *Heard* v. *James* as to the measure of damages in replevin, and stated that this court should not be held as approving or disapproving the rule announced in that case.

We think the court erred in the second instruction given for the plaintiff in assuming that there was a market demand for the plaintiff's gravel and in making the market price, less the cost of taking it from the pit and cost of transportation as shown by sales of gravel only, the only rule by which the jury were to determine the value of the plaintiff's gravel.

In the case of *Omaha Co.* v. *Tabor*, 13 Col., 41, the action was trover for the conversion of ore wrongfully taken from the plaintiff's mine. The defendants had sold the ore, and the court held the measure of damages to be the value of the ore sold, less the cost of taking it from the mine and cost of transportation. The rule stated in plaintiff's second instruction would be the correct rule for ascertaining the value of ore or other material before it was taken from the mine, where there was a sufficient demand for it to give it a market value. In this case Rosenfield testified that gravel could not be shipped to New Orleans and sold like cotton and corn, and that all the gravel used there was furnished by parties who had contracts in advance for its use and sale. Collom stated there was no market price in New Orleans for gravel, but if good gravel was shipped there and offered at a lower price it could have been sold. Mitchell did not know of any price for gravel in New Orleans outside of street paving. The gravel furnished was sent by parties who had contracts for work before shipping.

Bartlet testified that five loads would supply the private demand for a year, and that there was no market in New Orleans for gravel in 1892, 1893, 1894 and 1895. Other witnesses testified to the same effect. Brown, city engineer, did not know of any market price for gravel in New Orleans. Almost all the gravel used was shipped in by companies owning it.

The record of the chancery suit, which terminated with a final decree by this court in *LeBlanc* v. *Illinois Central Railroad Co.*, 72 Miss., 669, was put in evidence. We think that record shows that the railroad company was setting up an honest claim of title to the lands on which this pit was situated. It was while that contest was going on that this gravel was removed by it. None was removed after the decree was rendered. We think that the plaintiff is only entitled to recover the value of the gravel before it was taken from the pit. That should have been determined, not from the price received from sales of gravel in small quantities alone, but from the whole evidence. Plaintiff's second instruction should have been modified and the appellant's instruction given.

It appears from the evidence that from March to August 17, 1892, the appellee was engaged in loading the cars of the railway company with gravel taken from his pit, under a contract by which he was to be paid by it nine cents per cubic yard. During that time about 1,800 car loads of the gravel in question were taken from the pit by the appellee. It is claimed by the appellant that he is not entitled to recover for the same, under the maxim *volenti non fit injuria*. The railway company was in possession and was claiming the pit, and appellee was doubtful of the validity of his title as against the claim of the railway company. Under the circumstances he should not be deprived of the right to recover the actual value of the material. *Evans* v. *Miller*, 58 Miss., 120. The verdict and judgment in this case, under any view, was not warranted by the evidence, it being so large as to shock the conscience.

*Reversed and remanded.*