404 So.2d 565 (1981)
MASONITE CORPORATION and Hilda Hines
v.
Marie T. WILLIAMSON and W.B. Tate.
No. 52901.
Supreme Court of Mississippi.
October 14, 1981.
*566 Daniel, Coker, Horton & Bell, Thomas A. Bell, Joy Lambert Phillips, B. Stevens Hazard, Jackson, Guy, Dowdy & Whittington, William S. Guy, McComb, B. Calvin Cosnahan, for appellant.
Mounger & Mounger, Breed O. Mounger, Sr., Tylertown, Keith Starrett, for appellee.
Before PATTERSON, C.J., and SUGG and HAWKINS, JJ.
PATTERSON, Chief Justice, for the Court:
Marie Tate Williamson and W.B. Tate brought suits in the Chancery Court of Pike County for trespass and conversion of timber on their lands. All parties involved in the timber cutting and resulting sales were made defendants in the suits which were consolidated for trial. The chancellor found in favor of Mrs. Williamson and W.B. Tate. Two defendants, Masonite Corporation and Hilda Hines, appeal, assigning numerous errors, only four of which require discussion.
During the summer of 1976, George Brown entered into a verbal agreement with Hilda Hines to purchase timber owned by Miss Hines. Brown then entered into verbal agreements with other parties to cut and remove the timber. The timber was sold to different lumber mills, principally to mills owned by Masonite Corporation. All *567 these parties  Hilda Hines, George Brown, those who cut, loaded, and hauled the timber, and the purchasers of the timber  were made defendants in the present action.
The land owned by Hilda Hines is joined on the south by a 40 acre tract of land owned by Marie Williamson. The Bala Chitto Creek meanders back and forth along the southern border, with Miss Hines owning approximately three acres south of this creek. W.B. Tate owned sixty acres involved in this dispute, adjoining the Hines and Williamson properties. This controversy arose over timber cut south of the Bala Chitto Creek.
Miss Hines testified that at the time she contracted with Brown, she was uncertain about the location of her boundary lines, but thought that she owned three acres south of the creek. Although no fence marked the property lines, Brown made only superficial efforts to locate the boundary lines. Under Brown's direction almost the entire 40 acres of timber belonging to Mrs. Williamson was clear cut. Cutting was also done on W.B. Tate's land, though not as extensively as on the Williamson tract. Cutting stopped when the Williamsons and Tates became aware of the cutting and asserted their ownership of the land. Brown subsequently pled guilty in the circuit court to two counts of malicious trespass arising out of these facts.
Proof of the amount of wood cut and removed came from the testimony of a forester. He made a 100% stump count of the cutting on both the Williamson and Tate lands. Measurements of the diameter and height of each stump were used to compute the volume of board feet in each tree cut. From the calculations the forester determined that 934 trees, with a stumpage value of $26,397.80 and a delivered value of $44,160, were cut off the Williamson land. 220 trees, having a stumpage value of $12,090 and delivered value of $19,039, were found to be cut from W.B. Tate's land.
The chancellor found each defendant who actually received and converted any timber liable for damages. Brown was held liable for damages in the amount of the delivered value of the timber plus the statutory penalty of $15 per tree. Although a conspiracy between Brown, Hines, and Craft, the principal cutter, had been alleged, the chancellor did not find that it had been proven. Miss Hines was held liable for $13,656.38, the amount she was paid by Brown less $343.62, the amount of the timber on the property she owned south of the creek. Masonite and the other purchasers of the converted timber were held liable for the delivered value of the timber they purchased. The damages against Masonite totaled $26,770.21. The chancellor found Masonite entitled, on its cross-bill, to recover against Brown the amount Masonite paid in damages to Mrs. Williamson and W.B. Tate.
Hilda Hines in her primary assignment of error contends that the judgment against her was erroneous because it was granted on the basis of negligence while the pleadings sounded of trespass and conversion based on conspiracy. In the court's final decree, the chancellor stated "that the timber was hauled within 15 feet of the residence of Miss Hines and she should have realized that all of the timber could not possibly be coming from the three acres which she claimed to own from south of the Bala Chitto Creek." From this finding of fact, Miss Hines contends that the judgment against her was based on negligence. We disagree. This factual determination led to the chancellor's judgment against Miss Hines based on conversion, not negligence.
Conversion results from conduct intended to affect property. Conversion requires an intent to exercise dominion or control over goods inconsistent with the true owner's rights. Mississippi Motor Finance, Inc. v. Thomas, 246 Miss. 14, 149 So.2d 20 (1963); W. Prosser, Handbook of the Law of Torts 83 (1971). In finding that Miss Hines should have realized the timber did not come from her own land, the chancellor found this intent to exercise dominion or control. Thus, when Miss Hines contracted for the cutting and received periodic *568 payments for the timber, she exercised control over the timber inconsistent with the rights of Mrs. Williamson and W.B. Tate. Neither a mistake of fact on the part of Miss Hines concerning the location of the property lines nor the good faith of Miss Hines is a defense to this action of conversion. The chancellor's determination that Miss Hines should have realized the source of the timber is simply a finding that Miss Hines acted in a positive way sufficient to constitute conversion. Thus, we find no merit in this assignment of error.
Hilda Hines further contends that the court's judgment against her was contrary to the overwhelming weight of the evidence. Miss Hines testified that she received only $3500 from Brown as payment for the timber, while Brown testified that he paid her approximately $14,000. Miss Hines contends that her testimony was more credible, reasonable, and substantiated than the testimony of Brown. She attempted to substantiate her testimony by records of deposits into her savings account. While the conflicting testimony of both Brown and Hines was substantiated to a certain extent, the testimony of both individuals was vague and elusive at times. In considering the testimony of both Brown and Hines, we do not find that the chancellor was manifestly wrong in his factual determination. Thus, this assignment of error is without merit.
The primary assignment of error by Masonite Corporation concerns the measure of damages used by the chancellor. The damages assessed against Masonite were based on the delivered value of the timber, the price paid for the timber delivered to the Masonite mills. Masonite contends that the correct measure of damages is the stumpage value, the value of the standing timber before it is enhanced by cutting, loading, and hauling to the lumber mills.
It is well settled when a trespass is willful, the trespasser is held liable for enhanced damages, the value of the timber as enhanced by the trespasser's labor in cutting, loading, and hauling the timber. Chevron Oil Co. v. Snellgrove, 253 Miss. 356, 175 So.2d 471 (1965); Heard v. James, 49 Miss. 236 (1873). The chancellor found that Brown, the original trespasser, was willful in his trespass and awarded damages of the delivered value of the timber against Brown. However, Masonite argues that because it was not the original trespasser and because it acted in good faith in purchasing the timber, the enhanced damages of delivered value was not the appropriate measure of damages.
It is well settled in this state that the measure of damages in an action for conversion is the value of the property at the time and place of its conversion. Phillips Distributors, Inc. v. Texaco, Inc., 190 So.2d 840 (Miss. 1966); Ingram Day Lumber Co. v. Robertson, 129 Miss. 365, 92 So. 289 (1922). Under this rule the delivered value is the appropriate measure of damages. Masonite converted the timber when it purchased the timber cut and delivered to its mill. Thus the value at the time and place of conversion is the delivered value.
Where trees have been cut and removed through inadvertence or mistake, the proper measure of damages is the stumpage value, the value of the standing trees, unenhanced by any labor of the trespasser. Chevron Oil Co. v. Snellgrove, 253 Miss. 356, 175 So.2d 471 (1965); Heard v. James, 49 Miss. 236 (1873). Masonite argues that because of its good faith in purchasing the timber, the measure of damages should be the stumpage value, the same as that used when the original trespasser acted in good faith. Some states have held that an innocent purchaser from a good faith trespasser is liable only for the stumpage value and not for any enhanced value. E.g. Koelling v. Ralph Anderson Lumber Co., 392 S.W.2d 393 (Mo. 1965); Smith v. Shiflett, 66 Wash.2d 462, 403 P.2d 364 (1965). See Annot., 69 A.L.R.2d 1335 (1960). However that is not the situation in the present case.
While we have not ruled specifically on the measure of damages against an innocent purchaser of converted timber from a willful trespasser, we are of the opinion the delivered value is the appropriate measure *569 of damages. This is the rule enunciated by an early U.S. Supreme Court case, E.E. Bolles Wooden Ware Co. v. U.S., 106 U.S. 432, 1 S.Ct. 398, 27 L.Ed. 230 (1882), and followed in numerous jurisdictions. E.g. Smith v. Shiflett, 66 Wash.2d 462, 403 P.2d 364 (1965); Godwin v. Taenzer, 122 Tenn. 101, 119 S.W. 1133 (1909); Central Coal & Coke Co. v. John Henry Shoe Co., 69 Ark. 302, 63 S.W. 49 (1901). This position is strengthened, we think, by the fact that had the owners been able to identify their timber at the Masonite mills, they could have recovered possession from Masonite, causing Masonite to lose its purchase price, the delivered value. Thus, we are of the opinion that the delivered value of timber is the appropriate measure of damages against one who unknowingly purchased converted timber from a willful trespasser.
Both appellants assign as error the failure of the chancellor to issue separate decrees. The separate suits brought by Mrs. Williamson and W.B. Tate were consolidated for trial, and then a single decree was issued by the chancellor. In the damage award against Masonite and Hilda Hines, the chancellor did not divide the damage award between Mrs. Williamson and W.B. Tate.
While the general rule of law provides for separate decrees in consolidated causes, we have expressly held that a single decree is allowable when "the nature of the matters be such that it is clearly proper to include them in one decree." Elliott v. Harrigill, 241 Miss. 877, 133 So.2d 612 (1961) citing V. Griffith, Mississippi Chancery Practice, § 506 (1950).
In our opinion the single decree was proper in the circumstances of this case. Because the records of Masonite and of those persons cutting the timber did not reflect the location of the trees on the property on which they were cut, it was impossible to determine how much of the timber delivered to Masonite came from Mrs. Williamson's land and how much came from W.B. Tate's land. Likewise the amount of money Miss Hines was paid for timber on the separate tracts belonging to Mrs. Williamson and to W.B. Tate could not be determined. We are of the opinion compensation should not be denied Mrs. Williamson and W.B. Tate simply because records did not show which timber came from which tract of land and what proportionate sum Tate or Williamson was entitled to. Thus we are of the opinion that the single decree was proper and equitable under these circumstances.
Having considered all the assignments of error, we find them without merit. Thus, this cause is affirmed.
AFFIRMED.
SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE and HAWKINS, JJ., concur.
BOWLING, J., takes no part.