435 So.2d 690 (1983)
BAY SPRINGS FOREST PRODUCTS, INC.
v.
Mildred WADE, Davis Wade, Nell D. Wade, Jerry Minter Wade and Ann Pierce.
No. 53790.
Supreme Court of Mississippi.
August 3, 1983.
*691 James B. Everett, Decatur, for appellant.
Thomas R. Jones, Bourdeaux & Jones, Meridian, for appellees.
Before PATTERSON, C.J., and ROY NOBLE LEE and ROBERTSON, JJ.
ROBERTSON, Justice, for the Court.

I.
This civil action arises out of the purported sale of wrongfully converted timber to Bay Springs Forest Products, Inc. ("Bay Springs"). The timber was cut from land in Newton County, Mississippi, owned by members of the Wade family, without their knowledge or consent. The Wades brought suit for the value of the converted timber purchased by Bay Springs.
A jury of the Circuit Court of Newton County found for the Wades and awarded damages in the amount of $100,740. Final judgment has been entered thereon. Feeling aggrieved, Bay Springs has appealed. For the reasons set forth below, we affirm.

II.
At all times relevant hereto Mildred Wade, Davis Wade, Nell D. Wade, Jerry Minter Wade, and Ann Wade Pierce (hereinafter "the Wades") were holders of record title to the west half of Section 5, Township 7 North, Range 11 East in Newton County, Mississippi. The east half of Section 5 was owned by Robert A. Grissom.
In 1979 Grissom engaged Jake Smith, Harvey Cleveland, and Bobby Gregory to cut timber from a 79 acre portion of the west half of Section 5, the part of the section owned by the Wades. Grissom claimed title by adverse possession.
During 1979 and 1980, Cleveland, Smith and Gregory cut the timber and hauled it to Bay Springs' woodyard in Hickory, Mississippi. Gregory alone hauled 497,715 board feet to Bay Springs' yard. Bay Springs purchased the timber from Gregory and paid $210 per thousand board feet delivered at the yard. A portion of the purchase price, called stumpage, went to Grissom as the alleged owner of the timber. The balance went to Gregory for cutting and hauling.

III.
This case was originally called for trial on August 21, 1981. After hearing some evidence, *692 a mistrial was declared, where upon the Wades amended their declaration to include certain allegations with reference to Bobby Gregory's trespassing on their land.
At this stage in the proceedings, the following order was entered by the Circuit Judge:
ORDER
The Court having considered motions in the above styled and captioned cause, and having heard argument of counsel, is of the opinion a mistrial should be declared in this cause, and the case is pre-emptorily set for trial on Wednesday, September 2, 1981, a regular day on this August, 1981, term of Court.
That the Plaintiff is given leave to amend his Declaration and for same to be done by 12:00 o'clock Noon, Tuesday, August 25, 1981, and with the Defendant given the right to file a response thereto by 12:00 o'clock Noon, Friday, August 28, 1981.
Following the Wades' filing of their amended declaration, Bay Springs sought a continuance, purportedly needing time to prepare a defense based upon the new allegations concerning Gregory's activities. The trial judge found that Mr. Gregory's activities had long been known to all. He overruled the motion for a continuance, stating
If there is a surprise, it appears to me that it is a result of neglect on the part of counsel. Therefore, this case will continue, ... .
There is no apparent reason why the case could not have been tried on August 21, 1981. Even assuming that a mistrial was proper, we discern no reason why the new trial should not have commenced immediately on August 21. The trial judge in fact continued the case until September 2, 1981. He thus gave Bay Springs twelve days more time to prepare for trial than it was really entitled to.
Bay Springs makes much of the point on this appeal. It charges that the trial court committed reversible error by overruling the motion for a continuance. Curiously, more pages of Bay Springs' briefs are devoted to this issue than to any other.
This Court has repeatedly held that the grant or denial of a continuance rests within the sound discretion of the trial judge. Rogers v. Rogers, 290 So.2d 631, 634-635 (Miss. 1974). We will not reverse in such cases unless convinced that the trial judge has abused his discretion and unless we are satisfied that injustice has resulted therefrom. Croft v. Bituminous Casualty Corp., 235 Miss. 95, 108 So.2d 700 (1959); Roberson v. Quave, Sheriff, 211 Miss. 398, 51 So.2d 62 (1951).
If anything, the trial judge here abused his discretion in favor of Bay Springs. He gave Bay Springs twelve extra days to prepare for trial. The trial judge correctly denied Bay Springs' motion for a further continuance.

IV.
Bay Springs attacks the Wades' claim that they owned the timber. This attack takes two forms. First, Bay Springs challenges the admissibility of the testimony of the Wades' surveyor, Maury Gunter. Admittedly, Gunter's testimony was critical in establishing that the lands from which the timber was cut were indeed within the Wades' half of Section 5. Second, Bay Springs claims that Grissom had acquired the 79 acres in question by adverse possession and that this Court should now so hold, notwithstanding the verdict of the jury to the contrary.

A. The Surveyor's Testimony

At trial the Wades called as a witness Maury Gunter, the County Engineer for Newton County. The qualifications of Mr. Gunter were admitted by counsel for Bay Springs. Gunter testified that he did private survey work and that he had been employed by the Wades to survey Section 5, Township 7 North, Range 11 East in Newton County. Gunter presented a detailed plat depicting the line separating the west half of Section 5 from the east half. The plat also depicted the 79 acres from which *693 the timber in question had been cut and removed.
Bay Springs assigns as error the trial court's receipt of this testimony and plat as evidence. Bay Springs argues that Gunter started at a pine knot which a neighbor showed him to be a corner for another survey. Gunter did not use a governmental survey corner as his point of beginning.
Gunter testified that his survey showed an established corner identified by a pine knot which, in his professional judgment, accurately located the true section corner. In addition, Gunter knew, located and used on his plat the northeast corner of Section 5 as it had been an established corner identified by a pine stake and an iron pin.
Craft v. Thompson, 405 So.2d 128 (Miss. 1981) recognizes the well settled proposition that the
testimony by a surveyor, and his plat of the property surveyed, is admissible so long as the qualifications of the surveyor are established, as well as the quality of the instruments used by him. Factual questions relating to the making of the survey are for the resolution of the chancellor [or jury]. 405 So.2d at 130.
Here there was no attack on the instruments used by Gunter.
The only authority cited by Bay Springs in support of its view that Gunter's testimony should have been excluded is Kelley v. Welborn, 217 Miss. 16, 63 So.2d 413 (1953). We read Kelley as establishing the correctness of the trial judge's decision to admit the testimony and plat of Mr. Gunter. The opinion in Kelley explains that the surveyor
did not claim to have started his survey at a recognized corner established by the original government survey, but he did testify that he had previously surveyed in that area and started at an old recognized corner and that his survey tied in with the old established lines. The accuracy of this survey was for the jury, Harris v. McMullan, 212 Miss. 382, 54 So.2d 544, and the trial court committed no error in refusing to exclude it.
217 Miss. at 21, 63 So.2d at 414.
Enough said.

B. The Adverse Possession Claim

There is even less merit to Bay Springs' adverse possession claim.
At trial Bay Springs contended vigorously that the 79 acres in question had become the property of Grissom (and his predecessors in interest) by adverse possession. There was, to be sure, substantial evidence offered by Bay Springs which tended to support this contention. Our review of the proceedings at trial, however, has revealed substantial testimony to the contrary. For example, Mrs. Jessie Vance Sistrunk, who was married for 50 years to Grissom's predecessor in title, recognized the Wades' property line and that prior timber cutting had not encroached upon it. Odell Loper, a neighbor, also gave testimony supportive of the Wades.
The adverse possession issue in this case was essentially one of fact. It was submitted to the jury on conflicting evidence and proper instructions. The jury resolved the issue against Bay Springs. It requires little familiarity with the institutional structure of our judicial system to know that this Court does not sit to redetermine questions of fact. Our scope of review is severely limited.
We consider the evidence in the light most favorable to the party against whom the motion for judgment notwithstanding the verdict has been made. We disregard any evidence on the part of the moving party in conflict with that evidence (although, of course, we may consider uncontradicted evidence offered by the moving party). If there be credible evidence, and reasonable inferences which may be drawn therefrom, which would support the verdict reached by the jury, that verdict must stand. See, e.g., General Tire and Rubber Co. v. Darnell, 221 So.2d 104, 105 (Miss. 1969); Paymaster Oil Mill Co. v. Mitchell, 319 So.2d 652, 657 (Miss. 1975); Buford v. Jitney Jungle Stores of America, Inc., 388 So.2d 146, 147 (Miss. 1980); Gee v. Hawkins, 402 So.2d 825, 827 (Miss. 1981); *694 and City of Jackson v. Locklar, 431 So.2d 475, 478-479 (Miss. 1983).
Under these familiar principles and cases, the verdict of the jury in favor of the Wades and against Bay Springs on the adverse possession issue is clearly beyond our power to disturb.

C. Conclusion

For the reasons just stated, Bay Springs' two primary attacks on the Wades' claim of ownership of the timber in question are rejected. What we say in the remainder of this opinion proceeds on the now established premise that the Wades were and are the true and lawful owners of the timber in issue.

V.
Reduced to its essence, this is a civil action brought to recover the value of converted timber. At Grissom's express direction, Gregory and others undertook the systematic and extensive cutting of substantial amounts of valuable timber from lands owned by the Wades. Bay Springs purchased the timber.
Under our law a purchaser of converted timber acquires no title from the transferor. He is liable to the true owner for the value of the timber, even though he acted in good faith and paid value. See, e.g., Masonite Corp. v. Williamson, 404 So.2d 565 (Miss. 1981).
This state of the law has been carried forward in the Mississippi Uniform Commercial Code.[1] The Sales Article is made expressly applicable to timber sales such as that purportedly made to Bay Springs by Grissom via Gregory. Section 75-2-107(2) expressly provides that
a contract for the sale apart from the land ... of timber to be cut is a contract for the sale of goods within this chapter... .
The applicability of UCC Article Two to timber sales has been recognized generally. See, e.g., Coos Lumber Co., Inc. v. Builders Lumber & Supply Corp., 104 N.H. 404, 188 A.2d 330, 332 (1963); Groth v. Stillson, 20 Mich. App. 704, 174 N.W.2d 596 (1969); Davis v. Kolb, 263 Ark. 158, 563 S.W.2d 438, 439 (1978); Williams v. J.W. Black Lumber Co., 275 Ark. 144, 628 S.W.2d 13, 16 (1982); see generally Annotation, 4 A.L.R. 4th 912, 940-941 (1981).
Timber, whether cut or to be cut, easily falls within the definition of "goods" in the Sales Article. See Miss. Code Ann. § 75-2-105(1) (Supp. 1982).
Section 75-2-403(1) then provides that a purchaser of goods [here timber] acquires all title which his transferor had power to transfer, ... .
But if the transferor had neither title nor the power to transfer title, the purchaser acquires nothing.
Grissom was a trespasser on the land of the Wades. He engaged Gregory and the others to cut, and in the eyes of the law convert and steal, the Wades' timber. Neither Grissom nor Gregory had any power to transfer title in and to this timber to Bay Springs. Accordingly, Bay Springs acquired no title from Grissom or Gregory.
We have recognized this construction of the Sales Article of the UCC in cases involving other types of converted property. Allstate Insurance Company v. Estes, 345 *695 So.2d 265, 266 (Miss. 1977); and Walker v. Johnson, 354 So.2d 792, 793 (Miss. 1978) each involved stolen automobiles. In each a good faith subsequent purchaser claimed the car. In each the court held that one purchasing stolen property acquires no title. As stated in Allstate Insurance Company v. Estes, supra,
The dictate of Section 75-2-403 is clear. Regardless of the number of transactions, one cannot remove himself from the confines of the rule: A purchaser can take only those rights which his transferor has in the subject goods; a thief has neither title nor the power to convey such. 345 So.2d at 266.
The Oregon case of Whitlock v. Hogrefe, 278 Or. 739, 740 565 P.2d 1092, 1093, 1094 (1977) recognized that a purchaser of converted timber acquires no title better than that of the seller, citing UCC Section 2-403. The Court further recognized that the purchaser is liable to the owner for the property or its value. 565 P.2d at 1094. Because we have been legislatively mandated to construe the Uniform Commercial Code so as to "make uniform the law among the various jurisdictions" [Miss. Code Ann. § 75-1-102(2)(c) (1972)], we give considerable weight to constructions placed upon code provisions by the highest courts of our sister states.
We hold that Bay Springs acquired no title to the timber in question. At all times that timber has been owned by the Wades. A proper application of the legal principles discussed above gives the Wades a right to recover from Bay Springs the timber or its value. The Circuit Court has recognized that right and has enforced it. We affirm.

VI.
The jury returned a verdict in favor of the Wades in the amount of $100,740. This no doubt reflected the jury's determination of the value of the converted timber. Judgment has been entered thereon. On this appeal, Bay Springs challenges the verdict as being excessive in amount.
There was evidence received from which the jury could have found that Gregory delivered approximately 497,715 board feet of timber to Bay Springs' yard in Hickory. The price paid was $210 per thousand board feet delivered at the yard. Simple mathematics suggest an aggregate delivered price of the timber of $104,520.15  some $3,780.15 more than the jury's verdict.
There was further testimony to the effect that three other reasonably comparable and contemporaneous timber sales in the area had produced sales prices to the owners, per thousand board feet, of $242.50, $227.60 and $241.89, respectively; that is, the stumpage prices paid the owners were in these three amounts. The $210 per thousand paid by Bay Springs in this case was a delivered price. It included stumpage plus a sum paid to Gregory for cutting and hauling. Seen in this light, the $210 price appears a bargain indeed, at least from the standpoint of Bay Springs. And, to be sure, the Wades argue that this low price was sufficient to alert a sophisticated timber purchaser that something was amiss in this transaction.
The trial court instructed the jury that the measure of damages was the fair market value of the timber. The Court defined fair market value, in Jury Instruction No. P-3, as follows
Fair market value of timber is the price it would bring if offered for sale in the open market by its owner, who desires to sell it, but was under no necessity or compulsion to sell it, and purchased by a buyer who desired to buy it, but was under no compulsion to do so, each party having full knowledge of market conditions and other factors that would aid them in establishing a value satisfactory to each.
This, of course, is a garden variety, shorthand definition, of fair market value utilized in a variety of contexts.[2] It is not challenged as error on this appeal.
*696 Still there is a serious problem with this instruction in that it fails to specify that point in time at which fair market value is to be measured.[3] Fair market value of uncut timber on the stump is one thing. Fair market value of the timber in the yard after cutting and hauling is higher.[4] And, if any processing has occurred in the yard, value is further enhanced.
This Court has recently considered the measure of damages in cases where an innocent party has purchased converted timber from a willful trespasser.[5] In Masonite Corp. v. Williamson, 404 So.2d 565 (Miss. 1981) this Court held that "the delivered value is the appropriate measure of damages... ." 404 So.2d at 568. In explaining the rationale of this rule the Court reasoned
that had the owners been able to identify the timber at the Masonite Mills, they could have recovered possession from Masonite, causing Masonite to lose its purchase price, the delivered value. Thus, we are of the opinion that the delivered value of timber is the appropriate measure of damages against one who unknowingly purchased converted timber from a willful trespasser. 404 So.2d at 569.
Under the authority of Masonite Corp. v. Williamson, the trial court should have instructed the jury that the measure of damages was the fair market value of the delivered timber as it lay in Bay Springs' yard.[6]
As we review the evidence, it becomes crystal clear that Bay Springs, the party complaining here, was not prejudiced by deficient jury instruction. The evidence of comparable sales established a range of fair market stumpage values of between $227.60 and $242.50 per thousand board feet. Accepting as we must (under the principles discussed in Section IV(B) above) that 497,715 board feet of timber was delivered to Bay Springs, the jury's verdict under proper instructions could have been much higher!
Accepting the Wades' proof on the number of board feet of timber delivered to Bay Springs, we mathematically deduce that the jury could have assumed a value of only $202.41 per thousand board feet. All of the credible evidence suggested that the fair market stumpage value substantially exceeded $202.41 per thousand board feet. If this be so, the fair market delivered value  the proper measure under the authority of Masonite Corp. v. Williamson  was necessarily higher.
Bay Springs had best leave well enough alone.
For the foregoing reasons, the jury's determination that the value of the converted timber was $100,740.00 is beyond our power or inclination to disturb.

VII.
Finally, Bay Springs argues that the trial court erred in refusing an instruction *697 it had requested regarding certainty in damages. Instruction No. D-6, requested by Bay Springs and refused by the Court, reads as follows:
The Court instructed the jury that the burden is on the Plaintiffs [the Wades] to prove by a preponderance of the evidence with a reasonable degree of certainty that timber bought by the Defendant, Bay Springs Forest Products, Inc., was taken from lands owned by the Plaintiffs.
The instruction is obviously defective. It has nothing to do with damages, as Bay Springs' counsel argue in their brief. It includes two conflicting statements of the burden of proof on the fact question of whether the converted timber came from lands owned by the Wades. First, the instruction says that the Plaintiffs must prove "by a preponderance of the evidence" that the timber came from the land. Then, in the next breath, the instruction requires that Plaintiffs prove "with a reasonable degree of certainty" that the timber came from the Wades' land.
There are, to be sure, many cases in our reports requiring that damages be established with reasonable certainty, see, e.g., S.H. Kress & Co. v. Sharp, 156 Miss. 693, 126 So. 650 (1930); Dennis v. Prisock, 254 Miss. 574, 181 So.2d 125 (1965). See also, Miss. Model Jury Instructions, Section 20.03. The jury here was properly instructed in this regard. The error assigned here is without merit and is denied.
AFFIRMED.
PATTERSON, C.J., WALKER and BROOM, P.J.J., and ROY NOBLE LEE, BOWLING, HAWKINS, DAN M. LEE and PRATHER, JJ., concur.
NOTES
[1] The Uniform Commercial Code, as enacted in this state, expressly provides that

Unless displaced by the particular provisions of this code, the principles of law and equity ... shall supplement its provisions. Miss. Code Ann. § 75-1-103 (Supp. 1982).
Section 75-2-403 is a "particular provision" of the Mississippi UCC which "displaces" (although it does not change) the common law respecting the power of persons such as Grissom and Gregory to transfer title. Beyond that, we find that the doctrine of conversion as enunciated and applied in Masonite Corp. v. Williamson, 404 So.2d 565 (Miss. 1981) has not been displaced by any provision of the Mississippi UCC which has been brought to our attention. We note that other states have relied upon Section 1-103 to recognize that the right to sue for conversion is alive and well post-UCC. Berkheimers, Inc. v. Citizens Valley Bank, 270 Or. 807, 529 P.2d 903, 905 (1974); Day v. Schenectady Discount Corporation, 125 Ariz. 564, 611 P.2d 568, 572 (App. 1980).
[2] See, e.g., Miss. Code Ann. § 27-35-50 (Supp. 1982). State Highway Commission v. Buchanan, 175 Miss. 157, 189-190, 166 So. 537, 538 (1936); City of Clarksdale v. Stuart, 184 Miss. 179, 181, 185 So. 588 (1939).
[3] This defect also appears in Instructions P-1 and P-11 each of which states the measure of damages as merely "the fair market value of such timber".
[4] The point is illustrated by the facts of our recent case of Masonite Corp. v. Williamson, 404 So.2d 565 (Miss. 1981). The proof revealed that 934 trees had been cut from the Williamson land having a stumpage value of $26,397.80 and a delivered value at the Masonite yard of $44,160.00. Further, 220 trees were cut from the Tate land having a stumpage value of $12,090.00 and a delivered value of $19,039.00. 404 So.2d at 567.
[5] There is, of course, no doubt that the jury found that Grissom first and then Gregory were willful trespassers. To find for the Wades the jury was first required to find that Gregory cut the timber from the Wades' land "without their permission or consent". Beyond that is evidence, in addition to the low purchase price, suggesting strongly that Bay Springs knew Gregory was offering converted timber. We note Floyd Wade's testimony regarding his conversation with Garland Jeffcoat, one of Bay Springs' supervisors. Wade stated that Jeffcoat told him, "I knew it wasn't his (Grissom's) timber to sell, because I had looked at it before." Charlie Goodman also talked with Jeffcoat who told him that he (Jeffcoat) had said to Grissom, "I can't do it (buy this timber) because, you know, I don't think I can get title to it."
[6] The trial judge, of course, did not have the benefit of our decision in Masonite. The trial of this case commenced on September 2, 1981. The Masonite decision was released on October 14, 1981.