**MORRONE COMPANY, a Georgia Corporation Plaintiff**

v.

**Rodney BARBOUR, Individually, and Barbour International, Inc., a Mississippi Corporation Defendants**

**No. CIV.A. 3:02CV495LN.**

United States District Court, S.D. Mississippi, Jackson Division.

Oct. 29, 2002.

Harvey L. Fiser, Mary Largent Purvis, Adams and Reese, Jackson, Shymeka L. Hunter, Stephen M. Dorvee, Arnall Gorden Gregory, LLP, Atlanta, GA, for Plaintiff.

Peter Larkin Doran, Wells, Moore, Simmons & Hubbard, Jackson, MS, for Defendant.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of counter-defendants Morrone Company and Jack Morrone, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the counter-claim asserted against them.[1] Jack Morrone has also filed a Rule 12(b)(2) motion, seeking to be dismissed from the lawsuit based upon the court's alleged lack of personal jurisdiction over him. Counter-plaintiff Barbour International, Inc. has responded in opposition to the motions, and the court, having considered the memoranda and submissions of the parties, concludes that the motions should be granted in part and denied in part.

---

1. When addressing a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the court must accept as true all facts pleaded in the complaint and liberally construe the allegations in favor of the plaintiff. *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir.1997). The complaint should not be dismissed unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1250 (5th Cir.1997). Motions to dismiss for failure to state a claim are viewed with disfavor and are rarely granted. *Lowrey*, 117 F.3d at 246.

The present business litigation involves a dispute arising out of patents held by Barbour International, a Mississippi corporation, in a turkey frying apparatus which it allegedly designed.[2] Morrone Company, a competitor of Barbour International incorporated in Georgia, originally filed a complaint seeking, *inter alia,* to declare patents held by Barbour International to be invalid and to nullify a licensing agreement previously entered into between the parties. Under the terms of the licensing agreement, Morrone Company had agreed to pay Barbour International a percentage of royalties from the sale of the cooking apparatus in exchange for a license to sell the product. Barbour International has counter-claimed against both Morrone Company and its president Jack Morrone,[3] alleging, *inter alia,* that these counter-defendants fraudulently concealed sales in order to avoid paying the royalties required by the licensing agreement. Barbour International also asserts breach of contract, unfair competition and conversion claims against these counter-defendants. Counter-defendants presently seek the dismissal of all counter-claims asserted against them.

 The court first considers Jack Morrone's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction. Personal jurisdiction may be exercised over a non-resident defendant in a diversity action (1) if the defendant is amenable to service of process under the relevant state long-arm statute and (2) if due process is satisfied under the fourteenth amendment to the United States Constitution. *Cycles, Ltd. v. W.J. Digby, Inc.,* 889 F.2d 612, 616 (5th Cir.1989) (*citing DeMelo v. Toche Marine, Inc.,* 711 F.2d 1260, 1265 (5th Cir.1983)). Mississippi's long-arm statute, Miss.Code Ann. § 13–3–57, is not coextensive with federal due process, and an analysis of the scope of the statute is therefore generally required when there is a challenge of the court's exercise of personal jurisdiction. *Allred v. Moore & Peterson,* 117 F.3d 278, 282 (5th Cir.1997).

 In asserting that personal jurisdiction over Jack Morrone exists in the present case, Barbour International relies upon the tort prong of § 13–3–57, which provides that "any nonresident person ... who shall commit a tort in whole or in part in this state against a resident or nonresident of this state ... shall thereby be subjected to the jurisdiction of the courts of this state."[4] Barbour International's counter-complaint alleges three separate theories of recovery in tort against Jack Morrone, as follows: fraud, fraudulent concealment and conversion.[5] Jack Morrone contends that these claims all arise

---

**2.** Morrone Company denies that the idea for the turkey frying apparatus actually originated with Barbour International.

**3.** Jack Morrone was not a party to the complaint filed by Morrone Company.

**4.** Miss.Code Ann. § 13–3–57 provides:

Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.

**5.** To the extent that the unfair competition claim seeks recovery under Mississippi law, this claim arguably constitutes a tort claim. However, the complaint does not allege that Jack Morrone was personally responsible for such unfair competition.

from Morrone Company's alleged failure to pay royalties required by the Licensing Agreement, and, as such, are properly characterized as breach of contract, rather than tort, claims.[6] The court disagrees, at least with regard to the fraud and fraudulent concealment claims. The counter-complaint alleges that:

21. Morrone Company, acting through its President, Jack Morrone, has intentionally misrepresented the sales of patented products by Morrone, which would be subject to the terms of the License Agreement.

22. Pursuant to the terms of the Agreement, Morrone Company undertook an obligation to timely and accurately report sales information. Morrone Company at all times knew that Barbour International would rely on its reporting in accepting royalties pursuant to the terms of the License Agreement, and Barbour International had a reasonable right to rely on Morrone to provide accurate information, in good faith, in connection with the License Agreement.

23. Morrone Company, through its president, Jack Morrone, actively participated in an effort to defraud and deceive Barbour International, all of which resulted in damages to Barbour International, for calender year 2001, of not less than $ 155,000.00.

It is apparent that the counter-complaint does not allege a simple failure on the part of Morrone Company to pay royalties required by contract. To the contrary, the counter-complaint alleges that both Morrone Company and Jack Morrone took active steps to conceal facts, i.e., the sales figures, necessary for Barbour International to properly determine its contractual right to royalties.

■ In light of the foregoing, the court concludes that the counter-complaint alleges the commission of a tort by Jack Morrone within the meaning of Mississippi's long-arm statute. The court further concludes that, inasmuch as the misleading sales figures were allegedly provided to Mississippi corporation Barbour International, the torts in question were allegedly committed at least "in part in this state against a resident ... of this state." *See* § 13–3–57. The counter-complaint alleges that Jack Morrone personally participated in these tortious acts, and Jack Morrone has failed to submit affidavits or other evidence in opposition to these allegations. In considering a Rule 12(b)(2) motion to dismiss without an evidentiary hearing, it is well established that the allegations of a complaint, unless controverted by opposing affidavits, "must be taken as true, and all conflicts in the facts must be resolved in favor of the plaintiffs for purposes of determining whether a prima facie case for personal jurisdiction has been established." *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir.1985).

■ Based on the foregoing, the court concludes that Mississippi's long-arm statute does not preclude it from exercising jurisdiction over Jack Morrone. The court further concludes that exercising personal jurisdiction over Morrone would not run afoul of the due process clause of the Fourteenth Amendment to the United States Constitution. To comply with the Fourteenth Amendment, the court must find that Jack Morrone has (1) purposefully established "minimum contacts" with Mississippi and (2) that entertaining the suit against him would not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). In the view of the

---

**6.** It is undisputed that Jack Morrone is not personally a party to the licensing agreement.

court, the allegations of tortious conduct committed by Jack Morrone are sufficient to meet both prongs of the *International Shoe* test,[7] and Jack Morrone's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction will therefore be denied.[8]

The court now turns to the Rule 12(b)(6) motions to dismiss filed by both Jack Morrone and Morrone Company. These counter-defendants first assert, in a vein similar to Jack Morrone's Rule 12(b)(2) arguments, that Barbour International's tort claims constitute mis-styled contract claims and should therefore be dismissed. As discussed previously, however, the counter-defendants' alleged actions in fraudulently concealing sales sub-

ject to the licensing agreement is sufficient to remove the present case from the scope of a simple breach of contract action. The court further concludes that, construing the allegations of the counter-complaint in favor of Barbour International, it cannot be concluded "beyond a doubt" that it can "prove no set of facts" which would allow it to meet the required elements of its fraud and fraudulent concealment claims.[9] *See Jefferson,* 106 F.3d at 1250. The court therefore concludes that Barbour International has sufficiently alleged fraud and fraudulent concealment to survive a Rule 12(b)(6) motion to dismiss.[10]

That brings the court to the motion to dismiss Barbour International's

---

7. That is, the complaint alleges that Jack Morrone took purposeful steps to defraud a Mississippi corporation with which his company had contracted. In the view of the court, this is sufficient to establish minimum contacts with Mississippi. The court further concludes that exercising jurisdiction over Jack Morrone under these circumstances would not offend "traditional notions of fair play and substantial justice." *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158.

8. Jack Morrone also seeks dismissal based upon Barbour International's failure to serve process upon him. Barbour notes, however, that the 120–day time limit for serving process has not expired, *see* Fed. R. Civ. Pro. 4(m), and it represents that it is currently in the process of serving process. Based on this representation, the motion to dismiss for failure to serve process will be denied.

9. In order to establish fraud under Mississippi law, the plaintiff must prove (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury. *See Franklin v. Lovitt Equip. Co., Inc.,* 420 So.2d 1370 (Miss.1982). The tort of fraudulent conceal-

ment is closely related to the ordinary fraud action; the Mississippi Supreme Court has held that an omission or concealment of material facts can constitute a misrepresentation, just as can a positive, direct assertion. *Davidson v. Rogers,* 431 So.2d 483, 485 (Miss.1983). In order to recover damages for fraudulent concealment, a plaintiff must demonstrate that the defendant "took some action, affirmative in nature, which was designed or intended to prevent and which did prevent, the discovery of the facts giving rise to the fraud claim." *Id.* The court cannot say beyond doubt that there is no set of facts which would allow Barbour International to meet the requisites of these claims.

10. Counter-defendants also argue that the fraud allegations of the counter-complaint are not sufficiently specific to meet the pleading requirements of Federal Rule of Civil Procedure 9(b), which requires that fraud be pled with "particularity." The court concludes that, while the counter-complaint is not highly specific, it does sufficiently set forth the nature of the alleged fraud to meet the requirements of Rule 9(b). In so concluding, the court is cognizant of the fact that, in many cases, it will be virtually impossible for a party to determine the exact nature of fraud which allegedly takes place behind the "closed doors" of a competitor corporation. This being the case, establishing overly rigorous pleading requirements in the present context would be unreasonable.

conversion counter-claim. The conversion counter-claim asserts that:

31. The circumstances described above regarding the fraudulent concealment of sales information and refusal to pay royalties has resulted in a conversion of funds by Morrone Company for its own use and benefit, when such funds should have been paid to Barbour International pursuant to the terms of the License Agreement.

The court agrees with counter-defendants that this claim alleges nothing more than a failure to pay royalties required by the licensing agreement and, therefore, does not constitute a proper conversion action. Under Mississippi law, conversion requires an "intent to exercise dominion or control over property inconsistent with the true owner's rights." *Masonite Corp. v. Williamson,* 404 So.2d 565, 567 (Miss.1981). The Fifth Circuit has concluded, in a similar context, that while a failure to pay royalties required by a mineral lease may have constituted breach of contract, it was insufficient to give rise to a claim for conversion. *Piney Woods Country Life School v. Shell Oil Co.,* 726 F.2d 225, 242 (5th Cir.1984). Based on this authority, the court concludes that counter-defendants' motion to dismiss the conversion claim should be granted.

■ Counter-defendants next allege that Barbour International's breach of contract counter-claim should be dismissed, inasmuch as Barbour has failed to comply with contractual conditions precedent for filing such an action, most notably the sixty-day notice requirement. This argument does not constitute a proper basis for dismissal under Rule 12(b)(6). In considering a 12(b)(6) motion to dismiss, the court may not consider the record as a whole, but, rather, must limit its inquiry to "the facts stated in the complaint and the documents either attached to or incorporated in the complaint," as well as matters of which it may take judicial notice. *See Lovelace v. Software Spectrum, Inc.,* 78 F.3d 1015, 1017–18 (5th Cir.1996). Counter-defendants request the court to consider extrinsic evidence in ruling upon the motion to dismiss the breach of contract counter-claim, but such would be improper in the present context.[11] The motion to dismiss Barbour's breach of contract counter-claim will therefore be denied.

■ The court now considers counter-defendants' motion to dismiss the unfair competition claim brought against them. Counter-defendants' arguments on this issue, like their arguments on the breach of contract claims, are not properly considered in the present Rule 12(b)(6) context. Counter-defendants seek dismissal of Barbour International's unfair competition claims based upon the *Noerr–Pennington* doctrine set forth by the United States Supreme Court. *See Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United Mine Workers of America v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965).

The essence of the *Noerr–Pennington* doctrine is that parties who petition the government for governmental action favorable to them, including by filing lawsuits, cannot be prosecuted under the antitrust laws even though their petitions are motivated by anticompetitive intent. *Video Int'l Prod., Inc. v. Warner–Amex Cable Communications, Inc.,* 858 F.2d 1075, 1082 (5th Cir.1988). Morrone Company contends that Barbour's unfair competition counter-claim constitutes an improper attempt to restrict it from seeking antitrust

11. Barbour International denies that it failed to comply with conditions precedent to the contract and has submitted exhibits in support of this denial.

relief in its original complaint, in violation of the *Noerr–Pennington* doctrine.

 Barbour International contends, however, that the "sham" exception to the *Noerr–Pennington* doctrine is applicable in the present case. The United States Supreme Court has explained the two requirements for establishing this "sham" exception as follows:

> First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr*, and an antitrust claim premised on the sham exception must fail. Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation. Under this second part of our definition of sham, the court should focus on whether the baseless lawsuit conceals "an attempt to interfere directly with the business relationships of a competitor."

*Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.,* 508 U.S. 49, 60, 113 S.Ct. 1920, 1928, 123 L.Ed.2d 611 (1993) (citations omitted).

Barbour International contends that the antitrust action asserted in Morrone Company's complaint is, in fact, a sham, and that the *Noerr–Pennington* doctrine therefore does not preclude its counter-complaint. The court concludes, however, that any consideration of whether the "sham exception" to the *Noerr–Pennington* doctrine is applicable in the present case would require an analysis of both the merits of the original action brought by Morrone Company and of its subjective motivation in bringing that action. These issues can only be properly analyzed through a consideration of evidence outside of the pleadings and exhibits attached to said pleadings, and, as such, are not appropriately considered in the present Rule 12(b)(6) context. The counter-defendants' motion to dismiss the unfair competition claims will therefore be denied.

In light of the foregoing, the court concludes that Jack Morrone's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction is not well taken and is denied. Counter-defendants' Rule 12(b)(6) motion to dismiss with regard to the fraud, fraudulent concealment, breach of contract and unfair competition claims brought against them is likewise denied but is granted with regard to the conversion claim.