MAXWELL, J.,
for the Court:
¶ 1. This ease involves damages imposed against Gary Lamar Smiley and his wife, Mary Ann Smiley, for the wrongful removal of timber from property the chancellor found they held in trust for the plaintiffs’/appellees’ benefit. While Mississippi law requires clear and convincing evidence to establish the existence of a trust, here, we are uncertain whether the chancellor employed this standard when deciding the trust issue. We remand for the chancellor to consider whether clear and convincing evidence supports the existence of a trust. And if so, the chancellor must determine what portions of fault on the timber-removal claim, if any, should be attributable to settling defendants or nonparties. We affirm the misappropriation award.
Facts and Procedural History
¶ 2. Jeanette Smiley, an eighty-four-year-old retired bank employee with no children, executed a will on October 14, 2004, leaving her home in Amite County and fifty of the 140 acres on which it stood to her nephew, Gary, and his wife, Mary Ann. Jeanette expressly conditioned the devise on Gary and Mary Ann moving into her home and caring for her until her death. Jeanette’s will left the remaining ninety acres to fifteen other nieces and nephews.
¶ 3. On May 23, 2005, approximately five months after Gary and Mary Ann had moved into Jeanette’s home, Jeanette executed a general durable power of attorney in the couple’s favor, authorizing them to act on her behalf. Then, on November 28, 2005, Jeanette executed a warranty deed conveying all 140 acres of her property in Amite County, including the ninety-acre tract, to Gary and Mary Ann. Jeanette made the conveyance “trusting” Gary would follow her will. The warranty deed specifically expressed that:
This conveyance is executed trusting that Gary Lamar Smiley will follow the dictates of my Last Will and Testament with regard to the disposition of the *1174 above described property. In the event, however, that said Gary Lamar Smiley should predecease me, then, in that event, his executor/administrator shall follow the dictates and dispose of said property according to my Last Will and Testament.
(Emphasis added).
¶ 4. Jeanette died on July 5, 2006. And less than a month later, Gary and Mary Ann began clear-cutting the property’s timber. Though Jeanette’s will left the couple only fifty of the 140 acres, Gary and Mary Ann concentrated their timber-cutting efforts on the separate ninety-acre tract — the property Jeanette had reserved in her will for other family members.
¶ 5. The plaintiffs — ten devisees of the ninety-acre tract — sued Gary and Mary Ann; Timberland Management Services Inc.; Eddie Franklin; and Buffalo Wood, Land, and Timber Inc. The plaintiffs sought damages for the wrongful harvesting of timber on this tract, alleging that Gary and Mary Ann held the ninety-acre tract in trust for their benefit. They also claimed Gary and Mary Ann had misappropriated over $100,000 from Jeanette. The plaintiffs settled with Timberland, Franklin, and Buffalo Wood for a total of $98,000 for their role in harvesting timber on the ninety acres. But the plaintiffs proceeded to trial against Gary and Mary Ann.
¶ 6. After holding a trial, during which she reviewed the will and warranty deed, the chancellor found the deed to Gary and Mary Ann had created some sort of trust, subject to the express terms of Jeanette’s will. Finding Gary and Mary Ann held the ninety-acre tract in trust for the plaintiffs’ benefit, the chancellor awarded the plaintiffs $292,319.32 for wrongful timber removal.[1] She also awarded the plaintiffs $44,692.62 on their misappropriation claim.
Discussion
¶ 7. On appeal, Gary and Mary Ann argue the chancellor erred in (1) applying damages set forth in Mississippi Code Annotated section 95-5-10 (Rev.2004), (2) determining a trust arose from the warranty deed, (3) valuing the damages, and (4) finding they misappropriated Jeanette’s funds.
Standard of Review
¶ 8. We will not disturb a chancellor’s findings if supported by substantial evidence unless the chancellor abused his or her discretion, was manifestly wrong, or applied an incorrect legal standard. Sanderson v. Sanderson, 824 So.2d 623, 625-26 (¶ 8) (Miss.2002) (citation omitted). We review a chancellor’s legal conclusions de novo. Joel v. Joel, 43 So.3d 424, 429-30 (¶ 18) (Miss.2010).
I. Wrongful Removal of Timber

A. Applicability of Section 95-5-10

¶ 9. As to the wrongful-timber-removal claim, Gary and Mary Ann argue the chancellor erred in applying section 95-5-10[2] *1175 rather than assessing damages under the doctrine of waste. Both parties agree section 95-5-10 provides the exclusive remedy for cutting trees without consent. See Stockstill v. Gammill, 943 So.2d 35, 47 (¶ 24) (Miss.2006). However, Gary and Mary Ann argue section 95-5-10’s statutory damages were not available since they owned the ninety-acre tract as either co-tenants or life tenants with the plaintiffs. As they see it, due to their claimed co-ownership, any damages resulting from their authorization to cut the trees should have instead been assessed under the common-law doctrine of waste. See Tolbert v. Southgate Timber Co., 943 So.2d 90, 98-99 (¶ 29) (Miss.Ct.App.2006) (“[W]hen some but not all with ownership interests authorized agents to conduct the cutting, those claims are for waste whether against the contracting owners or against their agents as joint tortfeasors.”).
¶ 10. But a claim for waste only applies against those involved in the cutting of commonly owned timber. And here, the chancellor found the couple did not hold the ninety-acre tract as cotenants with the plaintiffs but were instead trustees “who owed an ever higher duty to them.” Based on this “trust” relationship, the chancellor determined the plaintiffs could recover for wrongful timber removal from the ninety-acre tract. Since the existence or imposition of this claimed trust is material to our review of the chancellor’s findings on the appropriate remedy for tree removal, we must closely examine the trust issue.

B. The Trust for Plaintiffs’ Benefit

¶ 11. Generally, trusts are classified under two broad categories: (1) express trusts and (2) implied trusts. Express trusts arise from a party’s manifestation of an intention to establish such an agreement and are created by a trust instrument. Miss.Code Ann. § 91-9-103(a) (Supp.2012). If the trust holds real property as an asset, the trust agreement must be in writing and signed by the grantor. Miss.Code Ann. § 91-9-1 (Rev.2004); Alvarez v. Coleman, 642 So.2d 361, 366-67 (Miss.1994).
¶ 12. While an express trust must be written, implied trusts differ in that they arise by implication of the law or are presumed from the circumstances. Mississippi recognizes two types of implied trusts: (1) resulting trusts and (2) constructive trusts. A resulting trust “is designed to give effect to the unwritten but actual intention of the parties at the time of the acquisition of title to the affected property.” In re Estates of Gates, 876 So.2d 1059, 1064 (¶ 17) (Miss.Ct.App.2004) (quoting Robert E. Williford, Trusts, 8 Encyclopedia of Mississippi Law § 73:2, at 422 (2001)). A constructive trust is a judicially imposed remedy used to prevent unjust enrichment when one party wrongfully retains title to property. McNeil v. Hester, 753 So.2d 1057, 1064 (¶24) (Miss. *1176 2000). The primary difference between the two is that “in a resulting trust, the acquisition ... is mutually agreeable[,] and the inequity arises out of the trustee’s subsequent unwillingness to honor the terms of the parties’ original agreement”; whereas a constructive trust may be imposed when “acquisition of title is somehow wrongful as to the purported beneficiary!.]” Simmons v. Simmons, 724 So.2d 1054, 1057 (¶ 7) (Miss.Ct.App.1998).
¶ 13. Here, the chancellor found a trust existed but did not distinguish the particular type. Though both parties insist the chancellor imposed a constructive trust, or something akin to it, a plain reading of her order shows she likely found Jeanette had intended to create an express trust by executing the deed “trusting” Gary would follow the dictates of her will — which did in fact leave the ninety-acre tract to the plaintiffs. According to the chancellor, the deed “was subject to the terms of the will and did not serve to vest fee title in the Smiley Defendants.” That the chancellor likely believed an express trust, rather than implied trust, arose is further supported by her finding that Gary and Mary Ann had “knowingly and willfully violated the explicit terms of that trust.”
¶ 14. But regardless of the type of trust implicated, “to establish a trust, the evidence must be more than a mere preponderance. The proof must be clear and convincing.” Lee v. Yeates, 256 So.2d 371, 372 (Miss.1972) (emphasis added). And here, it is not at all obvious whether this standard was employed. We note that in the chancellor’s order indicates she found:
Plaintiffs have met their burden of proof by a preponderance of the evidence on all necessary elements and are entitled to recover for the wrongful removal of the timber from the acres devised to them under the terms of the will. Even though the property was conveyed to the Smiley Defendants, such conveyance was specifically subject to a trust for Plaintiffs’ benefit, and the Smiley Defendants knowingly and willfully violated the explicit terms of that trust.
(Emphasis added). While the chancellor may have indeed considered the trust issue separately under the clear-and-convincing-evidence standard, she did not specifically say so in her order. This omission, coupled with the chancellor’s reference to the preponderance standard when describing the burden of proof “on all necessary elements,” supports our decision to remand to ensure the chancellor considers the trust issue under the clear-and-convincing-evidence standard. See Estate of Langston v. Williams, 57 So.3d 618, 622 (¶ 17) (Miss.2011).

C. Measure of Damages

¶ 15. Gary and Mary Ann also take issue with chancellor’s use of the delivered value of the timber in crafting the damages award. In Mississippi, the appropriate measure of damages in a wrongful-timber-removal case is the value of the harvested timber. Under section 95-5-10(1), an owner is entitled to double the fair market value of any timber wrongfully cut and removed from his property. While the fact an owner can recoup double damages is clear enough, the tricky part is determining the fair market value.
¶ 16. Obviously, the fair market value of “uncut timber on the stump” is lower than that of timber already cut and hauled. Bay Springs Forest Prods., Inc. v. Wade, 435 So.2d 690, 696 (Miss. 1983). “And, if any processing has occurred in the yard, value is further enhanced.” Id. Recognizing the inherent difficulties in determining the appropriate quantum of damages for wrongfully cut timber, our supreme court has looked to *1177 the culpability of the timber trespasser to set the measuring stick. “Where trees have been cut and removed through inadvertence or mistake, the proper measure of damages is the stumpage value, the value of the standing trees, unenhanced by any labor of the trespasser.” Masonite Corp. v. Williamson, 404 So.2d 565, 568 (Miss.1981) (citations omitted). But “when a trespass is willful, ... the value of the timber as enhanced by the trespasser’s labor in cutting, loading, and hauling the timber” — commonly known as the timber’s “delivered value” — is the appropriate measure of damages. Id. (citations omitted). The delivered value is also the appropriate quantum of damages when an unknowing party purchases converted timber from a willful trespasser. Id.
¶ 17. Here, the plaintiffs’ forestry expert testified the harvested timber’s delivered value was $178,233.50, while its stumpage value was $120,836.16. The chancellor adopted the delivered value as the appropriate measure of damages, which Gary and Mary Ann claim was an erroneous decision. But the chancellor found the couple had clearly known the ninety-acre tract along with its timber, was not theirs when they clear-cut it. As evidence, she pointed to a May 5, 2006 email from Gary supporting this knowledge. Since we cannot say the chancellor abused her discretion in finding Gary and Mary Ann willfully removed the timber, we find use of the timber’s delivered value when deciding damages was proper.
¶ 18. Still, we cannot affirm the damages award for two reasons. First, as discussed, we find remand is appropriate to ensure the trust issue is decided under the clear-and-eonvineing-evidence standard. If on remand the chancellor finds the evidence is not clear and convincing that a trust existed or should be imposed, there would be no damages owed to the plaintiffs. And second, the chancellor erred in deciding that apportionment of fault is impermissible in timber-removal cases, which we discuss next.

D. Apportionment of Fault

¶ 19. Gary and Mary Ann sought to apportion fault to settling defendants and nonparties. The chancellor considered their request, ultimately denying it.[3] Mississippi Code Annotated section 85-5-7(5) (Rev.2011) instructs that, in cases involving joint tortfeasors, “the trier of fact shall determine the percentage of fault for each party alleged to be at fault without regard to whether the joint [tortfeasor] is immune from damages.” The Mississippi Supreme Court has stated “that the term ‘party,’ as used in [section 85-5-7(5)], refers to any participant to an occurrence which gives rise to a lawsuit, and not merely the parties to a particular lawsuit or trial.” Estate of Hunter v. Gen. Motors Corp., 729 So.2d 1264, 1276 (¶44) (Miss.1999).
¶20. Timberland, Franklin, and Buffalo Wood settled with the plaintiffs prior to trial for $98,000. While the chancellor properly offset the plaintiffs’ recovery by this amount, she found apportionment did not apply in timber-removal claims. So she neither considered the percentage of fault of the settling defendants, nor any nonparties, as required by section 85-5-7(5). Therefore, we remand for specific findings of the respective percentages of fault, if any, attributable to settling defendants and nonparties.
II. Misappropriation
¶ 21. The chancellor found that during the two years Gary and Mary Ann had *1178 lived with Jeanette, the couple had deposited $110,782.43 of Jeanette’s funds into their personal bank accounts. The chancellor credited Gary and Mary Ann $39,224.25 for funeral expenses, nursing home expenses, and the cost of Jeanette’s sitters, but found the couple had misused and misappropriated the remaining $71,508.18. She found the plaintiffs were 10/16ths (62.5%) owners of the estate’s personal assets and awarded $44,692.62 in damages for misappropriation. Gary and Mary Ann argue the chancellor erred in not further reducing this amount $20,508.38 for repairs to Jeanette’s home, and $11,976.74 for Jeanette’s living expenses.
¶ 22. The chancellor has sole authority to determine the credibility of the witnesses and what weight to give to the evidence. Joel, 43 So.3d at 435 (¶ 41). And though Gary and Mary Ann claimed Jeanette had been pleased with the renovations to her home and had approved of the couple’s lavish spending, the chancellor obviously disbelieved their testimony. The chancellor reasoned that because the couple had known they would receive the home and fifty acres, any funds spent repairing the home had ultimately benefitted them. The chancellor also found there had been no accounting for the mineral lease. We find no reason to either question these findings or disturb her decision not to credit Gary and Mary Ann additional monies they claim were utilized for Jeanette’s living expenses. We affirm the misappropriation award.
Conclusion
¶ 23. On remand, the chancellor should analyze the trust issue under the clear- and-convincing-evidence standard. If after doing so, the chancellor determines a trust exists or should be implied, then she should make specific findings of the respective percentages of fault attributable to the settling defendants and non-parties, if any, and enter a final judgment accordingly.
¶ 24. THE JUDGMENT OF THE AM-ITE COUNTY CHANCERY COURT IS AFFIRMED IN PART AND REVERSED IN PART, AND THIS CASE IS REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE TO BE DIVIDED EQUALLY BETWEEN THE APPELLANTS AND THE APPELLEES.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, RUSSELL AND FAIR, JJ., CONCUR. BARNES, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.

. The chancellor awarded $235,268.22 for the harvested timber and $14,850 for reforestation costs, and assessed $80,001.90 in punitive damages. The chancellor also awarded $11,100 for expert-witness fees and $49,099.02 in attorneys' fees. The total judgment for the wrongful removal of timber was $390,319.32, which the chancellor reduced to $292,319.32, after crediting Gary and Mary Ann for the $98,000 the plaintiffs had already received from settling codefendants.

. Section 95-5-10(1) provides, in pertinent part:
If any person shall cut down, deaden, destroy or take away any tree without the consent of the owner of such tree, such person shall pay to the owner of such tree a sum equal to double the fair market value of the tree cut down, deadened, destroyed or taken away, together with the reasonable cost of reforestation, which cost shall not exceed Two Hundred Fifty Dollars *1175 ($250.00) per acre. The liability for the damages established in this subsection shall be absolute and unconditional^] and the fact that a person cut down, deadened, destroyed or took away any tree in good faith or by honest mistake shall not be an exception or defense to liability. To establish a right of the owner prima facie to recover under the provisions of this subsection, the owner shall only be required to show that such timber belonged to such owner, and that such timber was cut down, deadened, destroyed or taken away by the defendant, his agents or employees, without the consent of such owner. The remedy provided for in this section shall be the exclusive remedy for the cutting down, deadening, destroying or taking away of trees and shall be in lieu of any other compensatory, punitive or exemplary damages for the cutting down, deadening, destroying or taking away of trees but shall not limit actions or awards for other damages caused by a person.

. The chancellor’s denial of Gary and Mary Ann's claim was made off the record but is obvious from the context of the trial testimony.