# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-CA-01274-COA

IN THE MATTER OF THE LAST WILL AND          **APPELLANTS**
TESTAMENT AND CODICIL OF JOSEPH F.
TATUM, DECEASED: J. KEARNEY TRAVIS
JR., EXECUTOR, AND DAWN TATUM PARKER

v.

LOL FINANCE COMPANY                           **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/24/2020 |
| TRIAL JUDGE: | HON. RHEA H. SHELDON |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | BRIAN RANDOLPH BLEDSOE |
| | JAMES K. DUKES |
| ATTORNEYS FOR APPELLEE: | JOHN HOUSTON DOLLARHIDE |
| | LUTHER T. MUNFORD |
| | CAROLINE BAKER SMITH |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS, AND ESTATES |
| DISPOSITION: | AFFIRMED - 11/16/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, C.J., WESTBROOKS AND McCARTY, JJ.**

**WESTBROOKS, J., FOR THE COURT**:

¶1. J. Kearney Travis Jr., as executor of the Estate of Joseph F. Tatum, deceased, and Dawn Tatum Parker appeal from the chancery court's order subjecting Dawn's interest in her father's estate to LOL Finance Company's federal charging order. Travis argues that Dawn's father's last will and testament created a trust over her share, thus prohibiting the claim of a contract creditor like LOL Finance Company. Finding no error, we affirm.

**FACTUAL HISTORY**

### A. The Parkers' and Their Business's Underlying Contracts and Default

¶2.     Dawn Tatum Parker and her husband, Carl Parker, were the owners and managers of Clear Run Cattle Company (Clear Run). Between 2009 and 2017, the Parkers received lines of credit from LOL Finance Company (LOL Finance) as well as a term loan. Ultimately, the Parkers defaulted on their financial obligations, which led LOL Finance to file suit against them in federal court.

¶3.     In October 2009, LOL Finance agreed to provide the Parkers and Clear Run a line of credit in the principal amount of $1,500,000 to purchase and raise cattle. The Parkers simultaneously executed and delivered a business loan agreement and promissory note in which the Parkers jointly and severally promised to pay back by October 2019. The Parkers, Clear Run and LOL Finance amended the terms of the line-of-credit agreement on multiple occasions from 2010 to 2016, agreeing to additional principal amounts at new interest rates, including an additional $2,000,000 term loan in 2013 and an additional $7,000,000 business loan in 2016.

¶4.     In 2016 and 2017, the Parkers and Clear Run defaulted on their obligations to LOL Finance under the line of credit. Under the contractual language supporting the line of credit and the term loan, a default under the line of credit also constituted a default on the term loan. Upon the Parkers' failure to pay under these terms, LOL Finance initiated a claim in federal court.

¶5.     After filing the federal lawsuit, LOL Finance foreclosed on a deed of trust against real property in Covington County, Mississippi, owned by the Parkers, which secured payment

of the amounts due under the line of credit and term loan. LOL Finance also received payment from Peoples Bank pursuant to the sale of 602 acres of real property that the Parkers owned in Jefferson Davis County, Mississippi, on which LOL Finance held a second lien. In addition, LOL Finance received further payment from the Parkers' sale of eighty-two acres of real property, on which LOL Finance also held a second lien. As a result of these events, the Parkers were entitled to a credit of the proceeds, which was applied to all amounts due under the term loan. While this credit was able to partially pay their indebtedness, after applying all applicable credits, a total of over $6,000,000 was still owed to LOL Finance—an amount that continues to accrue interest at the rate of nearly $1,000 per day.

**B.     The Last Will and Testament of Joseph F. Tatum**

¶6.     In April 2016, Dawn's father, Joseph F. Tatum, died. He was survived by his wife and three adult children, including Dawn. Shortly after his passing, his last will and testament and codicil were submitted for probate in the Forrest County Chancery Court. The relevant excerpts from Tatum's will follow:

> KNOW ALL MEN BY THESE PRESENTS, that I, **Joseph F. Tatum**, of the County of Forrest, State of Mississippi, being above the age of eighteen years and being of sound and disposing mind and memory, do revoke all other Wills and Codicils heretofore made by me and ordain this my Last Will and Testament.
>
> . . . .
>
> ARTICLE 8.
>
> A.     I hereby give, devise and bequeath all of the rest, residue and remainder of my property, real, personal, and mixed, and wherever situated, including all failed and lapsed legacies, to my surviving children in separate, equal shares.

B. **If when any property is devised or bequeathed to a person who is under the age of thirty (30) years or in any beneficiary who is under a legal disability, then (1) the Executor shall hold such interest in Trust, as Trustee (with all the powers afforded to my Executor as Trustee herein) until such time as the beneficiary both attains age thirty (30) and is no longer under any legal disability, paying so much (including all or none) of the trust's net income and principal to the beneficiary as the Trustee deems appropriate for the beneficiary's health, education, support, and maintenance, adding to principal any undistributed income**. The Trustee may make such payments to the beneficiary, or to his or her parent, guardian, or the person with whom the beneficiary resides, without having to look to the proper application of those payments. If the beneficiary dies before attaining age thirty (30) or before the removal of any legal disability, the Trustee will pay all of such funds to the beneficiary's estate. The authority conferred on the Trustee is a power only and will not operate to suspend absolute vesting of any property in such beneficiary.

## ARTICLE 9.

A. The trusts specified herein are intended to be within the definition of "trust" as set forth in the Uniform Trustees' Powers Act. Chapter 372. Mississippi Laws of 1966 (Section 91-9-101, et seq., Mississippi Code of 1972), and the said Trustee shall have all of the powers afforded to trustees in and by the terms and provisions of said statute, as now or hereafter amended, reference to which statute is hereby made for all purposes.

. . . .

## ARTICLE 11.

A. I hereby nominate, constitute and appoint J. KEARNEY TRAVIS, JR. as Executor of this Will. In the event J. KEARNEY TRAVIS, JR. shall be unable or unwilling to serve, then ROBERT T. JACKSON, SR., shall serve in his place and stead.

B. I hereby nominate, constitute, and appoint my Executor as Trustee of any and all trusts created under this Last Will and Testament. . . .

. . . .

D. During the period of administration thereof, my estate shall be

4

considered a trust within the meaning or the said Uniform Trustees' Powers Act, reference to which is again hereby made. My Executor and my Trustee, respectively, shall have all of the powers afforded to trustees in and by the terms and provisions of said statute, as now or hereafter amended.

E.   In addition to the powers afforded to my Executor and to my Trustee by the Uniform Trustees' Powers Act, I specifically give and grant to my Executor and to my Trustee, respectively, the following powers, by way of illustration and not of limitation:

1. To pay, settle or compound any and all rights, debts, demands, or claims, either in favor of or against my estate, upon such terms as my Executor and my Trustee, as the case may be, deem fit and for such purposes to give or receive full receipts and discharges.

. . . .

4. To make payment in cash or in kind, or partly in cash and partly in kind upon any division or distribution of my Estate or the Trust estate (including the satisfaction of any pecuniary distribution) without regard to the income tax basis of any specific property allocated to any beneficiary and to value and appraise any asset and to distribute such asset in kind at its appraised value: and when dividing fractional interests in property among several beneficiaries to allocate entire interests in some property to one beneficiary and entire interests in other property to another beneficiary or beneficiaries.

## PROCEDURAL HISTORY

### A.   Federal Court

¶7.   Upon default, LOL Finance commenced a federal action in the United States District Court for the Southern District of Mississippi in case number 2:17cv121-KS-MTP against both the Parkers and Clear Run. This action resulted in a consent judgment being entered in October 2017, finding that Clear Run and Dawn were jointly and severally liable for over $6,000,000 in principal and interest, as well as per diem interest through the date of

judgment, post-judgment interest until the amount is paid in full, and attorney's fees and costs. On May 23, 2018, the federal court entered an order charging Dawn's interest in the Estate of Joseph F. Tatum with payment of the unsatisfied amount of the judgment in favor of LOL Finance.

### B. State Court

¶8. On August 14, 2017, the Executor of the Estate, J. Kearney Travis Jr., filed his final report to reflect the close of probate. The report stated that the main residual assets were "undivided interests in family businesses." Travis also sought authorization to "distribute all of the rest, residue, and remainder of the estate to the three surviving children in equal parts [to] share and share alike." Notably, Travis also included in his final report

> that in Sub-Paragraph B of Article 8 the decedent described treatment of any property given to a beneficiary under the age of thirty (30) or who was under a legal disability; and that the provisions of Sub-Paragraph B do not appear to be presently applicable to any of the beneficiaries or require the Executor to hold the interest of any beneficiary in Trust. . . . In Article 9, the decedent addressed any Trust which might be established under his Will; that there are in fact no Trusts to be established at the present time.

Additionally, the final report requested permission to distribute the estate per the will, "subject to instructions of the Court on the maintenance of a sufficient reserve in the event [of] unexpected estate tax liability . . . ." The chancellor entered a decree approving the final report on September 19, 2017.

¶9. Shortly after the federal court's consent judgment was entered in November 2017, Travis filed a "Notice of Trust for Residuary Beneficiary" in the Forrest County Chancery Court. Travis stated that he had received a copy of a consent judgment and had been

6

contacted by Dawn's attorney in a domestic case. Travis said that "the existence of the Consent Judgment and pending domestic action clearly invoke the provisions of the Will and require the Executor to hold the interest of [Dawn] Parker in Trust until such time as all issues which could affect her interest in her father's estate are resolved." On Dec. 11, 2017, the chancery court issued an ex parte order acknowledging and approving Travis's actions.[1]

¶10. On June 14, 2018, Travis filed in the chancery court a "Petition for Instructions of Court on Charging Order on Interest of Dawn Tatum Parker." Travis sought an order confirming that Dawn's interest in the estate was not subject to the charging order issued by the federal court. LOL Finance filed a response arguing that Travis had already pronounced in August 2017 that there was no trust in his final report as executor of the will. LOL Finance also maintained that the only trust called for by the will was a trust for the benefit of beneficiaries under the age of thirty or beneficiaries suffering from a legal disability, and there was no such person.

¶11. A hearing on the matter was held on June 8, 2020. The chancellor subsequently ruled in LOL Finance's favor, holding that Article 9, Sub-paragraph B only applied to trusts created under the will and not the entire estate; Article 11 of the will was a paragraph regarding powers of the executor and trustee, not a trust-creation clause; and no trust was

---

[1] This ex parte order approving Travis's actions of placing Dawn's interest in a trust was contradicted by the chancellor's later "Order Regarding LOL Finance Co. Charging Order" dated June 23, 2020. The June 2020 order held that there was no trust created by the provisions of the will. Although Travis touched upon this discrepancy in the June 8, 2020 hearing prior to the chancellor's order about the charging order, and again in his July 2020 motion for rehearing upon the decision of the court's regarding the charging order, no explanation was given for the discrepancy in the two decisions. However, that issue is not before this Court on appeal, so this discrepancy will not be further discussed.

created under the will. The chancellor further concluded that because Parker was neither under thirty years of age nor under a legal disability, no trust was created for her by the will, thus subjecting her interest in her father's estate to the charging order. Travis filed a motion for reconsideration, which the court denied in October 2020. Travis and Dawn now appeal.

## STANDARD OF REVIEW

¶12. Our Court has articulated that "[q]uestions of will construction . . . are questions of law and are reviewed under a de novo standard." *Kendrick v. Warren*, 309 So. 3d 122, 126 (¶9) (Miss. Ct. App. 2020). "[W]hen reviewing a chancellor's legal findings, particularly involving the interpretation or construction of a will, [the appellate court] will apply a de novo standard of review." *Adams v. Carney (In re Est. of Carney)*, 758 So. 2d 1017, 1019 (¶8) (Miss. 2000).

## DISCUSSION

¶13. In their appellate brief, Travis and Dawn request the appellate court to first determine whether the Last Will and Testament of Joseph F. Tatum created a trust over Dawn's share of the residual inheritance left to her by her father in the will. If a trust was created, Dawn next asks whether her share of the trust should be subject to the claims of a contract creditor. We hold that a trust was not formed over Dawn's inheritance under Tatum's last will and testament.

    **I.    Whether Tatum's last will and testament created a trust over Dawn Parker's inheritance.**

¶14. The preliminary question is whether Tatum's will creates a testamentary trust. Generally speaking, "to establish a trust, the evidence must be more than a mere

8

preponderance. The proof must be clear and convincing." *Smiley v. Yllander*, 105 So. 3d 1171, 1176 (¶14) (Miss. Ct. App. 2012) (quoting *Lee v. Yeates*, 256 So. 2d 371, 372 (Miss. 1972)). The evidence of creation must be "unmistakable." *Lee*, 256 So. 2d at 372 (quoting *Dalsoren v. Olsen*, 247 Miss. 778, 783-84, 157 So. 2d 60, 62 (1963); *Logan v. Johnson*, 72 Miss. 185, 16 So. 231, 232 (1894)).

¶15. Furthermore, our Supreme Court has held that courts should be cautious when finding that a testamentary trust exists. *Nichols v. Phillips* (*In re Est. of Brill*), 76 So. 3d 695, 700 (¶20) (Miss. 2011). The *Brill* court advised, "[W]hen express words are absent, courts must exercise due caution that words asserted to be the equivalent thereof shall not be pressed too far"; and the court further noted that "a testamentary trust will arise when the intention is reasonably manifest or well inferable from the entire language, viewed in light of all the surrounding circumstances." *Id.* (quoting *McNeese v. Conwill*, 177 Miss. 427, 170 So. 678, 679 (1936)). "[T]he testamentary instrument must be read as a whole." *Id*. at (¶18).

¶16. In the present case, the will contains express words in Article 8, Sub-paragraph B that specifically create a trust for any persons to whom property was devised or bequeathed who were under the age of thirty or under a legal disability. This section is a continuation of Article 8, Sub-paragraph A, in which Tatum describes his intent to leave the share of any predeceased child to that child's issue. A review of this section in its entirety indicates that Tatum's intent in Article 8 is to create a trust in the event one of his children predeceases him or disclaims his portion, and the person's issue is under the age of thirty or under a legal disability. This is the *only* trust in the will that could be established "unmistakably" by clear

9

and convincing evidence as our Supreme Court requires. *Smiley*, 105 So. 3d at 1176 (¶14);

*Lee*, 256 So. 2d at 372.

¶17. This reading of the will echoes the chancellor's findings in her "Decree Approving

Final Report" in which she found that

> in Article 8 Sub-Paragraph A, he gave, devised and bequeathed all of the rest, residue, and remainder of his property, real, personal, and mixed and wherever situated to his surviving children in separate, equal shares and provided what would happen if a child predeceased him; that all three (3) children of the decedent survived him . . . that in Sub-Paragraph B of Article 8 the decedent described treatment of any property given to a beneficiary under the age or thirty (30) or who was under a legal disability; that the provisions or Sub-Paragraph B do not appear to be presently applicable to any of the beneficiaries or require the Executor to hold the interest of any beneficiary in Trust as Trustee; and that the Executor should be authorized to distribute and vest title to the rest, residue and remainder of the estate in the three (3) surviving children.

¶18. Article 9 of the will, which describes the powers afforded to trustees, begins with the

language "[t]he trusts specified herein" and continues by describing the powers of these

specified trusts and their trustees. Article 9, Sub-paragraph B, on which Travis relies for his

argument that Dawn's interest in the estate should properly be in a trust, states:

> None of the beneficiaries hereunder shall have any power to charge by way of anticipation any interest given to such beneficiary: and all sums payable to such beneficiaries hereunder shall be free and clear of the debts, contracts, alienations and anticipations of the beneficiaries, and all sums payable to such beneficiaries hereunder shall be free and clear of debts, contracts, alienations and anticipations of the beneficiaries, and of all liabilities, levies, attachments, and proceedings of whatsoever kind . . . .

When read in context with the rest of Article 9, this language is understood as instructions

to trustees regarding "[t]he trusts specified herein" as outlined in Article 9, Sub-paragraph

A. Again, we must note that the only trust unmistakably specified in the will is the trust for

10

beneficiaries under the age of thirty or a legal disability. This interpretation does not include Dawn.

¶19. Travis and Dawn take the language of the will even further out of context by asserting that Article 11, Sub-paragraph D creates a trust over the entire estate.

> We have said in numerous cases that the fundamental rule governing the construction of all wills is to ascertain the intent of the testator. This intent must be gathered from the entire will or as is sometimes said 'from the four corners of the instrument,' giving due consideration and weight to every word in the will. The language used in a single clause or sentence does not control against the purpose and intention as shown by the whole will. The will must be construed in the light of the circumstances surrounding the testator at the time the will was written.

*Burgess v. Granberry (In re Granberry's Est.)*, 310 So. 2d 708, 711 (Miss. 1975).

¶20. Again, a reading of the *entirety* of Article 11 shows that the article nominates and describes the powers vested in the executor and trustee "of any and all trusts created under this Last Will and Testament." The article's initial sub-paragraphs nominate parties for executor and trustee and relieve these offices from giving bond. Article 11, Sub-paragraph E of Tatum's will continues by describing specific powers afforded to the executor and trustee. Because language used in a single clause or sentence does not control against the purpose and intention as shown by the whole will, or in this case the whole article, we agree with the chancery court's interpretation. *Id*. This language, when read together, shows the purpose of this article is the description of powers of the executor and trustee, not the creation of a trust.

¶21. The Court must give the proper weight to every word, clause, and sentence in each article of Tatum's will as required, but the Court looks at the attendant circumstances

11

required as well. The record shows that none of Tatum's children were under the age of thirty or under a legal disability, and none predeceased him or disclaimed their portion of the will, which would have caused their share of the residuary to pass to their issue who were themselves not under the age of thirty or suffering a legal disability. Given these facts, it is apparent that no trust was created by this will, which Travis underscored when he filed his final report to the chancery court stating "that there are in fact no Trusts to be established at the present time."

II. **Whether Dawn's Share of the Inheritance Should Be Subject to the Claims of a Contract Creditor.**

¶22. Because the initial question of whether a trust was created has been answered in the negative, there is no need to further discuss the second issue on appeal regarding whether Dawn's share of the trust should be subject to the claims of a contract creditor. "It must be presumed that the trial court's rulings were correct[,] and such presumptions will prevail unless the actual record supports the contrary." *Myers v. Miss. Farm Bureau Mut. Ins. Co.*, 749 So. 2d 1173, 1174 (¶4) (Miss. Ct. App. 1999).

## CONCLUSION

¶23. Looking at the will in its entirety, giving due consideration to the language, properly weighing every word in the will, and keeping in mind all the attendant facts and circumstances, the Court holds that the chancellor's findings in the order regarding the charging order shall be affirmed.

¶24. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, McDONALD, LAWRENCE,**

**McCARTY, SMITH AND EMFINGER, JJ., CONCUR. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**